1996–NMSC–075

930 P.2d 1148

**STATE of New Mexico, Plaintiff–Respondent,**

v.

**Thomas W. JOHNSON, Defendant–Petitioner.**

No. 23786.

Supreme Court of New Mexico.

Dec. 6, 1996.

698

T. Glenn Ellington, Chief Public Defender, Karl Erich Martell, Assistant Appellate Defender, Santa Fe, for Petitioner.

Tom Udall, Attorney General, Anthony Tupler, Assistant Attorney General, Santa Fe, for Respondent.

## OPINION

McKINNON, Justice.

1 Thomas W. Johnson appeals his conviction of aggravated assault with a deadly weapon, *see* NMSA 1978, § 30–3–2(A) (Repl. Pamp.1994), for which he received a suspended sentence. Due to a mandatory firearm enhancement, he was sentenced to one year in prison. Johnson asserts that the trial court erroneously refused to give his instructions on the common-law right of citizen's arrest as a defense. The court's refusal was based on its finding that there was no evidence of any criminal intent by the arrestee, Gary Minich, to assault Johnson with his car and on its conclusion that the tendered instructions were also "incomplete".

2 After four summary calendar notices, the Court of Appeals affirmed the conviction on a ground not raised by the trial court or the parties; however, the Court agreed with Johnson that there was sufficient evidence from which the jury could infer that he had been the victim of an aggravated assault. The Court nevertheless held that Johnson's requested instructions were defective because they did not require proof that he gave notice to Minich of his intent to make an arrest at the time the citizen's arrest was attempted and that there was no proof that Johnson gave the required notice.

3 We hold that it was not necessary to instruct on notice in order to give Johnson's instructions and that sufficient evidence supported the defense of citizen's arrest. We therefore reverse his conviction and remand for a new trial.

## FACTS AND PROCEEDINGS BELOW

4 The facts are essentially undisputed. One evening Johnson was driving his truck toward an exit at a Roswell mall parking lot when a car driven by Minich and occupied by three other teenagers nearly collided with him head on. To avoid the accident, Johnson swerved into a curb, damaging his truck. Johnson testified that just before he swerved, he was in fear of his life, believing that Minich had intentionally and unlawfully caused the accident. The Minich car, bearing out-of-state license plates, drove away without stopping. Johnson pursued Minich at a high rate of speed, honking his horn and flashing his "wig-wag" warning lights in an attempt to detain him until the police could "take care of the situation." Minich pulled into a Target parking lot and stopped. Johnson immediately exited his truck with an unloaded gun in his hand. He ordered Minich and his companions to get out of the car; it was a contested issue whether he actually pointed the gun at them. Minich sped off, followed by Johnson, who called the police on his cellular phone for emergency assistance, advised what had occurred, and described the Minich car. The incident ended when both vehicles arrived at the Roswell police station where Johnson formally complained about Minich's alleged misconduct. Upon request, he left his gun with the police.

5 Minich and his companions testified that they had no idea why they were being chased and that they stopped at the parking lot hoping that a security guard would help them. They also claimed that when Johnson ordered them out of the car at gun point, they became scared and drove off.

6 Johnson was later charged with four counts of aggravated assault with a deadly weapon. He was convicted on one count as to Minich but was acquitted on the other three counts involving Minich's companions. The Court of Appeals affirmed the conviction. We granted certiorari to address (1) whether it was necessary for Johnson to give notice of his intended citizen's arrest, and (2) whether the trial court should have corrected Johnson's instructions.

## THE DEFENSE OF CITIZEN'S ARREST IN A CRIMINAL ACTION FOR ASSAULT

7 The citizen's arrest defense is based on a person's common-law right to "arrest for a breach of the peace committed in his presence, as well as for a felony." *Downs v. Garay*, 106 N.M. 321, 323, 742 P.2d 533, 535 (Ct.App.1987). The reported cases in New Mexico reflect that the defense has only been raised once in response to a criminal charge against the person making the arrest. *See State v. Tijerina*, 84 N.M. 432, 504 P.2d 642 (Ct.App.1972), *adopted by* 86 N.M. 31, 32, 519 P.2d 127, 128 (1973), *cert. denied*, 417 U.S. 956, 94 S.Ct. 3085, 41 L.Ed.2d 674 (1974). There, during the notorious raid on the Tierra Amarilla courthouse, numerous individuals were detained or assaulted by Tijerina and his confederates. Tijerina claimed that these actions were necessary to apprehend those committing felonies or riotous acts in his presence. In affirming his assault conviction, the Court of Appeals found no evidence that required the giving of what amounted to citizen's arrest instructions, although that term was not used in the opinion. *See id.* at 434–35, 504 P.2d at 644–45. In *Downs*, the defense was raised in a civil damage action for assault and battery; the Court of Appeals noted in dicta that the arrestee must be informed of the citizen's arrest and the offense charged. 106 N.M. at 324, 742 P.2d at 536.

8 Neither *Tijerina* nor *Downs* sets out the essential elements of the defense of citizen's arrest, but here the Court of Appeals cited *Downs* as persuasive authority for its conclusion that notice is an essential element. The Court held that because Johnson did not give notice, no instruction on the defense could be given. We believe that *Downs* is not persuasive. Since it was a *civil* assault case there was no need for the plaintiff to prove that the defendant acted with criminal intent. General criminal intent is an essential element of criminal assault. *State v. Cruz*, 86 N.M. 455, 457, 525 P.2d 382, 384 (Ct.App.1974) (holding that because general criminal intent is a mental state of conscious wrongdoing, one who acts without an evil purpose but for fun or as a practical joke does not have criminal intent necessary to convict of assault).

9 Under civil law, "the arrest of another is not privileged unless the actor manifests to the other his intention to arrest him ... [or unless notice] is reasonably believed by the actor to be ... useless or unnecessary." Restatement (Second) of Torts § 128 (1965). The Court of Appeals relied on this section of the Restatement and on *Downs* and *Territory v. McGinnis*, 10 N.M. 269, 61 P. 208 (1900), *overruled on other grounds by State v. Deltenre*, 77 N.M. 497, 424 P.2d 782 (1966), *cert. denied*, 386 U.S. 976, 87 S.Ct. 1171, 18 L.Ed.2d 136 (1967), to hold that notice was required under the circumstances of this case.[1] We agree that notice is an element of the defense on which a prima facie showing must be made when the *arrestee* challenges the validity of the arrest or justifies as self defense his own violent response in resisting an arrest. *See, e.g., McGinnis*, 10 N.M. at 279–80, 61 P. at 212 (noting defendant who killed posse member claimed self-defense, alleging he was without knowledge of the identity of his attackers or the reason for the attack). However, failure to give the notice need not make an *arrestor's* act *unlawful* although the arrest may later be held to be *invalid* as having no legal force or effect. *See Squadrito v. Griebsch*, 1 N.Y.2d 471, 154 N.Y.S.2d 37,

1. The rules of the Restatement apply only to a civil claim involving liability for an invalid or unreasonable citizen's arrest, not to cases in which a citizen's arrest defense is asserted in response to a criminal charge. Restatement (Second) of Torts § 118 cmt a (1965).

38–39, 136 N.E.2d 504, 505 (1956) (holding that failure to give notice did not make arrest unlawful). Because the privilege to resist is not at issue here, we hold that notice was not an element of Johnson's prima facie defense of citizen's arrest.

10 It is the arrestor's actual *intent* that is often at issue in a criminal charge for assault against the arrestor; the response of the intended arrestee is of no consequence. *See Dinnan v. State,* 173 Ga.App. 191, 325 S.E.2d 851, 854–55 (1984) (stating that in defending against a charge of battery the salient issue was the state of mind of the defendant-arrestor of whether the defendant intended to harm the arrestee or was acting in "what he perceived to be a lawful manner," not whether the arrest was actually valid). Notice may become an issue, however, if the issue of whether the arrestor used reasonable force under the circumstances is raised. *See* Model Penal Code § 3.07(2) and cmt. 3(a) (1985) (requiring arrestor, *before resorting to force,* to give notice of intent to arrest unless circumstances are such that notice is apparent or cannot reasonably be made). Even if reasonable force was an issue in this case, notice is usually not required when the unlawful act was committed in the presence of the arrestor, as in this case. *See* Perkins, *The Law of Arrest,* 25 Iowa L.Rev. 201, 250 (1940). Rather, the notice requirement was intended to apply to situations in which the arrestor is attempting, without a warrant, to arrest a felon. *See id.*

11 Evidence of notice may also be presented to bolster the defendant-arrestor's claim of lawfulness in making the citizen's arrest, i.e., as proof that he was engaged in lawful, and not unlawful, behavior at the time of the incident. Notice was never an issue raised at trial in this case. It seems to have been undisputed until the appeal that Johnson intended to make a citizen's arrest. We conclude that notice was not relevant to the issue of the lawfulness of Johnson's actions at the time of the trial. Thus, there was no need for Johnson to argue that he fell into an exception to any notice requirement or to instruct the jury on any notice issue. *Cf. Kirk Co. v. Ashcraft,* 101 N.M. 462, 467, 684 P.2d 1127, 1132 (1984) (stating that there was no need for trial court to instruct the jury on a notice requirement when it was not at

issue); *see also Garcia ex rel. Garcia v. La Farge,* 119 N.M. 532, 540, 893 P.2d 428, 436 (1995) (stating that the preservation requirement should be applied with its purposes in mind, which are to alert the trial court to error in time for correction and to give opposing counsel fair opportunity to meet the objection).

**PROOF THAT A FELONY WAS IN FACT COMMITTED BY THE ARRESTEE IS NOT AN ESSENTIAL ELEMENT OF THE DEFENSE.**

12 The trial court refused Johnson's requested instructions because it believed that Johnson had to prove that Minich had *in fact* committed a felony in order to be entitled to the defense. The trial court found there to be insufficient evidence of Minich's criminal intent to commit assault to satisfy that requirement. Upon review of the record, the Court of Appeals found that sufficient circumstantial evidence of intent existed to support an instruction but did not state whether Johnson bore the burden of proving that Minich had committed the felony. While we agree with the Court of Appeals that there was sufficient evidence to support an instruction, we now give our comments on this issue and also set forth the essential elements of the defense for guidance in future cases.

13 In New Mexico, *McGinnis* indicates that the defense requires only that one "reasonably believe" a felony has been committed. *See* 10 N.M. at 280, 61 P. at 212 (determining what the law requires of a person "while rightfully in pursuit of one known or reasonably believed to be a desperate criminal"). Recent criminal cases in other states have also adopted this approach. In *State v. Cooney,* 320 S.C. 107, 463 S.E.2d 597 (1995), the defendant was charged with murder and raised the citizen's arrest defense. The court did not require proof that a felony had actually been committed by the arrestee. Instead, the defendant only had to show evidence of the reasonableness of his belief that a felony was committed. *Id.* 463 S.E.2d at

599. "The right to make a citizen's arrest may be based on certain information that a felony has been committed.... [I]f it was later found [that] the person arrested did not commit the felony, the arrest would *still be lawful* if there was reasonable cause for suspicion." *Id.* 463 S.E.2d at 599–600 (emphasis added). Again, this is a reasonable approach because the critical issue is whether the defendant-arrestor was engaged in criminal activity or lawful activity, not whether the arrestee actually committed a felony.

14 In *Dinnan,* a physician attempted to arrest a police officer for aggravated assault after having been informed that the officer had wrongfully beaten the victim. The Georgia Court of Appeals held that it was error to refuse the physician's instructions on citizen's arrest based on his information and observations of blood on the victim, notwithstanding that the physician had not observed the officer strike the victim. The court reasoned that the jury should determine whether the physician had reasonable and probable grounds of suspicion that a felony had been committed by the officer. 325 S.E.2d at 854–55.

15 It is true that for a period of time some states enacted statutes that placed greater restrictions on the right of citizen's arrest in an attempt to discourage "intermeddlers in the exercise of law enforcement." M. Cherif Bassiouni, *Citizen's Arrest* 23 (1977). We have not done so in New Mexico.

However, the need to encourage citizens to reasonably intervene arose dramatically with the substantial increase of crime in the 1960s, and with it came a change in legislative policy.... [Some] states developed criteria for citizen's arrest which paralleled the authority of peace officers but placed on citizens some additional restrictions.... The trend is now well established that a private person can perform an arrest on reasonable grounds to believe that a felony has been committed ... [which] is tested on the basis of what the

ordinary, reasonable person in the like circumstances would have perceived in this situation.

*Id.* at 23–24. There having been no changes in the New Mexico law of citizen's arrest either by statute or at common law, we believe that the standard implicit in *McGinnis* should remain as the law of this state. This standard is consistent with the legislature's only enactment analogous to citizen's arrest, which provides that a merchant's detention of one suspected of shoplifting (felony or misdemeanor) is lawful if based upon probable cause and reasonable behavior. *See* NMSA 1978, § 30–16–23 (Repl.Pamp.1994).[2] This standard is also consistent with our common-law requirements for lawful warrantless arrest by a police officer.

16 At common law, when a police officer has reasonable grounds or probable cause to believe that an offense has been committed in his presence, his warrantless arrest does not become *unlawful* if the arrestee is later found to be innocent. *See State v. Selgado,* 76 N.M. 187, 189, 413 P.2d 469, 470 (1966); *Bursack v. Davis,* 199 Wis. 115, 225 N.W. 738, 741 (1929); 3 W. LaFave, *Search and Seizure* § 5.1(c), at 30 (3d ed. 1996). Reasonable grounds or probable cause exists when, "at the moment the arrest was made ... the facts and circumstances within [an officer's] knowledge ... were sufficient to warrant a prudent man in believing that [the accused] had committed or was committing an offense." *Rodarte v. City of Riverton,* 552 P.2d 1245, 1252–53 (Wyo.1976) (quoting *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225–26, 13 L.Ed.2d 142 (1964)); *Selgado,* 76 N.M. at 189, 413 P.2d at 470 (accord). "There is ... a material distinction between that which would be required to sustain a conviction for an offense and that which is sufficient to justify a peace officer in arresting for a supposed commission of such offense." *Selgado,* 76 N.M. at 189, 413 P.2d at 470. Further, a common-law defense to a civil wrongful arrest or a false imprisonment suit also requires only that the officer prove

2. One article states that the fact that the shoplifting statutes "dispense with the traditional requirement of presence during commission of the [misdemeanor] crime [suggests] that the standard of probable cause offers sufficient limitation to discourage mistaken arrests." Note, *The Law of Citizen's Arrest,* 65 Colum.L.Rev. 502, 512 (1965).

that he or she acted in good faith and with probable cause and therefore lawfully under the circumstances. *Pierson v. Ray,* 386 U.S. 547, 555, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967), *overruled on other grounds by Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *see also Carroll v. United States,* 267 U.S. 132, 156, 161, 45 S.Ct. 280, 286, 287–88, 69 L.Ed. 543 (1925) (stating that "[i]n cases where seizure is impossible except without warrant, the seizing officer acts unlawfully and at his peril unless he can show the court probable cause," but that "he is not bound to show in his justification a felony actually committed to render the arrest lawful").

17 We recognize that some jurisdictions have held citizens to a higher standard, interpreting the citizen's arrest law to require that the felony offense must have in fact occurred. *See* 1 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 5.10, at 675 (1986). The Court of Appeals cited this section of the treatise as authority for the defense of citizen's arrest. The treatise cites several law review articles as authority for the proposition that "[a] private person ... is privileged to make [an arrest of a felon] only if the felony has in fact been committed." *Id.* The articles also provide, however, that in cases in which a felony is being attempted in the presence of the defendant, the arrest is lawful if "there was some overt act toward the commission of the felony, or a well grounded belief based on what was seen or heard that the felony was immediately imminent." Horace L. Wilgus, *Arrest without a Warrant,* 22 Mich.L.Rev. 673, 675 (1924); *see also* Note, *The Law of Citizen's Arrest,* 65 Colum.L.Rev. 502, 512 (1965) (noting that "a few jurisdictions have dropped the requirement that the felony have been committed, and have authorized citizen's arrest based wholly on probable cause"). We

agree with the proposition that "if the citizen's assistance in apprehending criminals is considered important for the safety and order of society, it would seem that the standard for measuring probable cause should be defined so as to protect the citizen who, in making an arrest, acts like a reasonable man." *The Law of Citizen's Arrest, supra,* at 512.

18 We conclude that it is not necessary that a defendant prove that in fact a felony was committed; it is enough to establish facts from which a jury can find that the defendant had a good-faith, reasonable belief that a felony had been or was being committed based on the arrestee's overt acts or other trustworthy information. We also hold that to support an instruction on the defense of citizen's arrest in a criminal case for the purpose of defeating either a finding of criminal intent or the essential element of unlawfulness, a defendant must produce evidence showing facts and circumstances within the defendant's personal knowledge (1) that would induce an objectively-reasonable person to believe (2) that a felony had been or was being committed (or a breach of the peace was being committed in his presence); (3) that the defendant acted in good faith based upon that belief and, if raised, (4) that the defendant acted with reasonable force under the circumstances.[3] It is clear to this Court that the trial court was concerned with vigilantism, which we define as unreasonable self-help action by citizens that tends to disrupt the administration of the criminal justice system. We feel confident however, that the above requirements will assist a jury in distinguishing between those who act unreasonably and unlawfully and those who have made a good-faith, objectively-reasonable effort to assist in law enforcement.

---

**3.** Under Section 132 of the Restatement (Second) of Torts, the use of force for the purpose of effecting a citizen's arrest "is not privileged" if the means employed are "in excess of those which the actor reasonably believes to be necessary." We adopt a requirement that includes the objective-person standard in order to ensure good-faith, objectively-reasonable behavior. *Cf. State v. Gallegos,* 104 N.M. 247, 250, 719 P.2d

1268, 1271 (Ct.App.) (stating that the defense of self defense is hybrid test consisting of whether defendant subjectively perceived an immediate threat and whether a reasonable person in similar circumstances also would have acted in self defense), *cert. quashed* (June 4, 1986), *abrogated on other grounds by State v. Alberico,* 116 N.M. 156, 861 P.2d 192 (1993).

### THE TRIAL COURT WAS UNDER A DUTY TO INSTRUCT ON JOHNSON'S THEORY OF THE CASE EVEN IF THE REQUESTED INSTRUCTIONS WERE INCOMPLETE OR INCORRECT.

■■ 19 "Aggravated assault consists of ... *unlawfully* assaulting ... another with a deadly weapon." NMSA 1978, § 30-3-2 (Repl.Pamp.1994) (emphasis added). When a defendant claims that an assault was justified because of his right to make a citizen's arrest, he is challenging the essential element of unlawfulness. *See State v. Parish,* 118 N.M. 39, 42, 878 P.2d 988, 991 (1994) (stating that " 'unlawful' means 'without lawful justification or excuse' "). Under *Parish,* once a defendant introduces some evidence of lawfulness, the court is under a duty to instruct on the state's burden to prove unlawfulness beyond a reasonable doubt. *See id.* at 44–45, 878 P.2d at 993–94. In this case Johnson presented evidence raising the issue of a reasonable belief that a felony occurred in his presence and that he had a good-faith belief in his lawful right to hold the perpetrator until he could obtain police assistance. The jury should have been instructed both on the defense of citizen's arrest *and* that it had to find beyond a reasonable doubt that Johnson was not reasonably attempting to make a citizen's arrest for the crime of aggravated assault.

20 Johnson tendered instructions on citizen's arrest that explained his actions were justified if they were undertaken during the course of a citizen's arrest and if the force used was reasonable. He also tendered an essential elements instruction that required the jury to find beyond a reasonable doubt that Johnson was not attempting to make a citizen's arrest. The trial court refused both instructions. The citizen's arrest instructions were defective because they failed to apprise the jury that Johnson was justified only if his actions were based upon probable cause under the circumstances. However, the court was under an independent duty to instruct on the essential elements, including unlawfulness, since lawfulness was raised by Johnson's testimony. The failure to do so was reversible error. *See id.*

### CONCLUSION

21 In summary, the jury should have been allowed to determine whether Johnson's actions were reasonable under the circumstances and made in a good-faith effort to make a citizen's arrest, thereby showing an absence of criminal intent or unlawful behavior. Given the paucity of decided cases in which the defense has been raised by the arrestor, its continued recognition has apparently not resulted in excessive vigilantism or other misconduct. Indeed, our holding today should give some comfort to those who dare to take reasonable action against others who are acting unlawfully when law enforcement officers are not immediately available for assistance. Having determined that it was not necessary for Johnson to present evidence that he gave notice of his intent to make a citizen's arrest in order to raise the defense, and that it was necessary for the trial court to correctly instruct the jury on the essential elements of Johnson's defense, we reverse and remand for a new trial.

22 **IT IS SO ORDERED.**

BACA, C.J., and MINZNER, J., concur.

