2005-NMCA-086

115 P.3d 232

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Ruben K. ARROYOS, Defendant–Appellee.**

No. 24,300.

Court of Appeals of New Mexico.

May 23, 2005.

Patricia A. Madrid, Attorney General, Joel Jacobsen, Assistant Attorney General, Albuquerque, NM, for Appellants.

Lawrence Allred, Marc A. Lilley, Lilley Law Offices, Las Cruces, NM, for Appellee.

*OPINION*

ROBINSON, Judge.

{1} The State appeals from the district court's order suppressing evidence and dismissing the DWI charge against Ruben Arroyos (Defendant) where a Deputy Marshal of the Town of Mesilla stopped Defendant in the City of Las Cruces for erratic driving. On appeal, the State contends that the district court did not have authority to suppress and dismiss these charges, that the Deputy Marshal's stop was justified as a lesser intrusion than the citizen's arrest that he was entitled to make, and that he acted reasonably and within his authority. As discussed below, we reverse.

## BACKGROUND

{2} On December 22, 2002, Deputy Marshal Lawrence Louick of the Town of Mesilla Marshal's Department observed Defendant's vehicle traveling west on University Avenue, which is within the boundary of the City of Las Cruces, not the Town of Mesilla. Initially, Deputy Marshal Louick observed Defendant make a wide right turn onto University Avenue, and observed Defendant's vehicle brake lights come on several times as he proceeded southbound on University Avenue. Deputy Marshal Louick followed Defendant's vehicle and, when Defendant turned southbound onto Stern Drive, the vehicle traveled to the left of the center line into the northbound lane for a significant distance before drifting back into the southbound lane. Deputy Marshal Louick then stopped Defendant and requested dispatch to send a Doña Ana County sheriff's deputy to the scene. While waiting for the sheriff's deputy, Deputy Marshal Louick approached Defendant, smelled alcohol on his breath, and had Defendant perform a finger-count test and recite the alphabet, which he recited only to the letter "D" and slurred his speech badly. At that time, Defendant admitted drinking alcohol. When Doña Ana County Sheriff's Deputy Timothy Girard arrived on the scene, Deputy Marshal Louick told him what had happened and then left. When Deputy Girard spoke to Defendant, he noticed that Defendant had bloodshot eyes, slurred speech, and smelled of alcohol. Deputy Girard had Defendant

perform the "walk and turn" and the "one-leg stand" field sobriety tests, both of which Defendant failed. Deputy Girard then arrested Defendant for DWI. There is nothing in the record that leads us to believe that Deputy Girard relied upon Deputy Marshal Louick's finger test or alphabet test. But, instead, Deputy Girard relied upon the field sobriety tests that he administered and Defendant failed.

{3} Deputy Marshal Louick testified that he was employed by the Town of Mesilla as a deputy marshal, and has been certified by the State of New Mexico as a law enforcement officer. He also admitted that he had no other authorization as a law enforcement officer, and had not been cross-commissioned, appointed, or cross-designated as a special deputy sheriff of the County of Doña Ana. It is undisputed that, from the initial observation by Deputy Marshal Louick all the way to the location of the stop, Defendant's vehicle, at no time, was within the jurisdictional boundary of the Town of Mesilla. In district court, Defendant moved to suppress the evidence and dismiss the charges on the grounds that Deputy Marshal Louick lacked jurisdictional authority to stop him. The district court dismissed with prejudice the State's claims against Defendant, ruling that Deputy Marshal Louick was without authority to stop Defendant outside the town limits of Mesilla. The State appeals.

## DISCUSSION

*May a deputy marshal, who observes erratic driving behavior, initiate a traffic stop outside his jurisdictional territory, when he is neither cross-commissioned nor in fresh pursuit, and where a local sheriff's deputy subsequently arrives on the scene, handles the case, and makes the arrest?*

■ {4} Defendant correctly observes that NMSA 1978, § 3–13–2 (1988) is a statutory grant of authority which is clear and limits Deputy Marshal Louick's jurisdictional territory within the Town of Mesilla. *See* § 3–13–2(A)(4)(d). It was undisputed that the traffic stop was made outside the limits imposed by Section 3–13–2. The State responds, however, that Deputy Marshal

Louick's stop was justified as a lesser intrusion than the citizen's arrest that he was entitled to make, and that he acted reasonably and within his authority. We agree.

{5} "Interpretation and application of the law are subject to a de novo review." *State v. Roman,* 1998–NMCA–132, ¶ 8, 125 N.M. 688, 964 P.2d 852. Our courts recognize that a municipal police officer may not enforce the motor vehicle code beyond the territorial limits of the officer's jurisdiction, unless the officer is in fresh pursuit of a defendant fleeing the jurisdiction, or the officer has been cross-commissioned with such authority. *Inc. County of Los Alamos v. Johnson,* 108 N.M. 633, 634, 776 P.2d 1252, 1253 (1989); *see also* NMSA 1978, § 66–2–12 (1978); NMSA 1978, § 31–2–8 (1981). Any person, however, may arrest another upon good-faith, reasonable grounds that a felony had been or was being committed, or a breach of the peace was being committed in the person's presence. *State v. Johnson,* 1996–NMSC–075, ¶ 18, 122 N.M. 696, 930 P.2d 1148; *see also Downs v. Garay,* 106 N.M. 321, 323, 742 P.2d 533, 535 (Ct.App. 1987) (holding that a private citizen may arrest another person for breach of peace or a felony committed in the citizen's presence). In New Mexico, a breach of peace is considered "a disturbance of public order by an act of violence, or by any act likely to produce violence, or which, by causing consternation and alarm, disturbs the peace and quiet of the community." *State v. Florstedt,* 77 N.M. 47, 49, 419 P.2d 248, 249 (1966) (internal quotation marks and citation omitted). Our Supreme Court held that "a person driving while intoxicated is committing a breach of the peace." *State v. Rue,* 72 N.M. 212, 216, 382 P.2d 697, 700 (1963).

{6} This question is one of first impression in New Mexico. We can obtain some guidance from *State v. Ryder,* 98 N.M. 453, 649 P.2d 756 (Ct.App.) (*Ryder I* ), *aff'd on different grounds,* 98 N.M. 316, 648 P.2d 774 (1982) (*Ryder II* ). In that case, a Bureau of Indian Affairs officer (BIA officer) stopped non-Indians for running a stop sign on an Indian reservation. Because the BIA officer was not cross-commissioned as a New Mexico peace officer, he did not have the authority to issue a citation for a state traffic offense. *Ryder I,* 98 N.M. at 454, 649 P.2d at 757. Instead, he detained the non-Indians until a cross-commissioned officer arrived. *Id.* This Court held that since the BIA officer was without police authority in this case, his actions were converted into those of a "private citizen." *Id.* at 456, 649 P.2d at 759. Our Supreme Court took *Ryder* up on *certiorari,* and affirmed on different grounds, indicating that the BIA officer was permitted to stop the motorist for running the stop sign and could have given the motorist a federal ticket based on his violation of state law. The Court held that it was not unreasonable for the BIA officer to hold a motorist for ten minutes until a proper officer arrived. *Ryder II,* 98 N.M. at 318–19, 648 P.2d at 776–77. Nonetheless, that Court did not expressly disapprove our rationale that the BIA officer's actions were converted into those of a private citizen.

{7} Unlike our present case, evidence used to convict the defendants in *Ryder* was gathered by both the BIA officer and the proper cross-commissioned officer. Here, the evidence against Defendant was not gathered by Deputy Marshal Louick, but instead, Deputy Girard relied upon the field sobriety tests which he administered independently to arrest Defendant. We make this observation to illustrate that since our Supreme Court held the actions of the BIA officer to be reasonable under *Ryder,* then clearly, we must conclude the actions of Deputy Marshal Louick were reasonable here.

{8} We read Section 3–13–2 as granting police officers official powers within their own jurisdictions, not divesting the officers of their common law right as citizens to make arrests or detentions. Thus, for the protection of individual liberties, a police officer outside his jurisdictional territory, absent statutory exceptions, cannot invoke a citizen's arrest where the arrest in question is based on information not readily available to a private citizen. *See People v. Niedzwiedz,* 268 Ill.App.3d 119, 205 Ill.Dec. 837, 644 N.E.2d 53, 55 (1994) (stating that "[a] police officer exceeds his authority to make a citizen's arrest ... when he uses the powers of his office to gather evidence unavailable to the private citizen outside his jurisdiction").

{9} In the present case, Deputy Marshal Louick did not use the power of his agency to obtain evidence unavailable to the private citizen. For instance, Defendant's erratic driving, constant braking, and crossing over the center line into the oncoming lane for a significant distance at 1:30 a.m. would have led any reasonable person, who observed these things, to conclude that Defendant was driving under the influence, which is a breach of the peace and likely to cause a violent collision. *See Florstedt,* 77 N.M. at 49, 419 P.2d at 249 (defining breach of the peace as "a disturbance of public order by an act of violence, or by any act likely to produce violence, or which, by causing consternation and alarm, disturbs the peace and quiet of the community" (internal quotation marks and citation omitted)). As a matter of public safety, we would expect no less from Deputy Marshal Louick.

{10} In support of its rationale, the State relies on *State ex rel. State v. Gustke,* 205 W.Va. 72, 516 S.E.2d 283 (1999). In *Gustke,* a uniformed police officer was driving his marked police vehicle home. *Id.* at 286. Outside the city limits, he saw a car being driven erratically by the defendant. *Id.* The officer contacted the county sheriff's office who had jurisdiction and went on to stop the vehicle himself. *Id.* Thereafter, a sheriff's deputy arrived and took over. The defendant was arrested for DUI. *Id.* The district court dismissed the drunk driving indictment because the police officer who made the stop was outside his agency's territory and did not have jurisdiction there. *Id.* at 286–87. The state petitioned its supreme court for a writ of probation, which was granted. *Id.* at 287. The court acknowledged that the police officer, who made the initial stop, did not have the authority to make the arrest where he did. *Id.* at 289. However, the court added that "[i]t has often been recognized that a police officer who is without *official* authority to make an arrest may nevertheless make the arrest if the circumstances are such that a private citizen would have the right to arrest either under the common law or by virtue of statutory law." *Id.* The court concluded that "[b]ecause the actions of [the officer] constituted a valid common law citizen's arrest, the circuit court erred in sup-

pressing all evidence flowing from [the officer's] stop of [the defendant]." *Id.* at 293.

{11} Because Defendant's initial stop was justified as a lesser intrusion than the citizen's arrest Deputy Marshal Louick was entitled to make, and the investigation which led to Defendant's arrest was performed by Deputy Girard, who had jurisdictional authority, we conclude the district court erred in suppressing the evidence flowing from Deputy Girard's investigation, and we need not address the State's jurisdictional issue. *See, e.g., Edwards v. State,* 462 So.2d 581, 582 (Fla.Dist.Ct.App.1985) ("We cannot think of a more apt illustration of such breach of the individual and collective peace of the people ... than to have a drunk driver at the wheel of a killing machine that is going all over the road and scaring oncoming drivers to death rather than killing them."); *Molan v. State,* 614 P.2d 79, 80 (Okla.Crim.App. 1980) ("This [c]ourt has held that a law enforcement officer outside his jurisdiction may make a citizen's arrest."); *State v. Johnson,* 661 S.W.2d 854, 859 (Tenn.1983) (acknowledging that a deputy acting outside of his territorial jurisdiction may be "limited to the authority of a private person" in making an arrest); *State v. Harp,* 13 Wash.App. 239, 534 P.2d 842, 844 (1975) (concluding that an officer acting outside of his territorial jurisdiction could make an arrest as a private citizen could make a felony arrest upon probable cause as a private citizen). Accordingly, we hold that a law enforcement officer acting outside of his or her territorial jurisdiction has the same authority to arrest as does a private citizen.

## CONCLUSION

{12} The decision of the district court is reversed, and the cause is remanded to the district court with instructions to vacate the order of dismissal, and to reinstate the cause for a trial on the merits.

{13} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID and LYNN PICKARD, Judges.