McKAY,
concurring in part and dissenting in part.
I respectfully dissent from the majority’s conclusion that Mr. Painter’s arrest was supported by probable cause. Under the totality of the circumstances in this case, I am not persuaded the facts and circumstances known to the officers were sufficient to warrant a prudent man in believing an offense had been or was being committed. See Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).
“Where an officer observes inherently innocuous behavior that has plausible innocent explanations, it takes more than speculation or mere possibility to give rise to probable cause to arrest.” Sherouse v. Ratchner, 573 F.3d 1055, 1062 (10th Cir.2009). The majority relies on the bank officials’ report to the officers that Mr. Painter had presented a cheek bearing his name as payee and inquired about obtaining cash back and the availability of funds. However, these actions strike me as inherently innocuous actions from which no criminal intent can be inferred. There are many reasons why an innocent customer presenting a check at a bank might wish to obtain cash back immediately and to know when all of the deposited funds will be available for his use, and I am not persuaded criminal intent can be inferred in any way from Mr. Painter’s simple inquiry regarding cash and the availability of funds.[1]
Nor am I persuaded the officers could infer intent to defraud from the information provided by the bank officials regarding the check’s fraudulent nature. Nothing in the bank officials’ report to the officers and the officers’ own investigation gave any indications that Mr. Painter was even aware the check was fraudulent. The majority opinion relies on the officers’ testimony that Mr. Painter could not provide corroborating information such as the identity of the person who provided him with the check or details regarding where he was supposed to wire the excess money. However, the officers also testified that Mr. Painter was answering their questions to the best of his ability and gave no indications that he was concocting a story or being deliberately evasive. Although this is a close case, I would conclude that a reasonable officer could not infer criminal intent simply because Mr. Painter was unable to generate corroborating information on the spot. I find it unreasonable to expect an innocent customer to enter his bank armed with the full details of any transaction in which he has received a check, and I would conclude that Mr. Painter’s inability to provide these details *804 to the officers in this case was insufficient to create probable cause for his arrest.
Although I would hold that the officers lacked probable cause, I nevertheless agree with the majority that Mr. Painter’s federal claims against the officers were properly dismissed on qualified immunity grounds. An officer is entitled to qualified immunity in a § 1983 action unless the unlawfulness of the officer’s conduct was apparent in light of pre-existing law, see Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), and I agree with the majority that the potential unlawfulness of Mr. Painter’s arrest would not have been apparent to a reasonable officer at the time. At the time of Mr. Painter’s arrest, several circuit courts had concluded in an analogous line of cases that an officer has probable cause to arrest an individual who presents a counterfeit bill for payment, even if there is no other evidence suggesting an intent to defraud. See Rodis v. San Francisco, 558 F.3d 964, 970 (9th Cir.2009) (collecting cases and holding that police officers were entitled to qualified immunity in a counterfeit bill case based on this precedent). Based on this precedent, I concur with the majority in affirming the dismissal of Mr. Painter’s federal claims.
As for Mr. Painter’s state law claims against the officers, however, I would hold that the district court erred in dismissing these claims. The district court concluded that the officers were entitled to summary judgment on these claims because they had probable cause for the arrest, see State v. Johnson, 122 N.M. 696, 930 P.2d 1148, 1153-54 (1996), and I disagree with this conclusion. The district court did not consider whether Mr. Painter’s state law claims might also be subject to the doctrine of qualified immunity, and this question has not been definitely resolved by New Mexico’s courts. See Romero v. Sanchez, 119 N.M. 690, 895 P.2d 212, 218 (1995) (“questioning] the parties’ assumption” that qualified immunity applied to actions brought under New Mexico’s Tort Claims Act, but declining to address this issue because it had not been raised by the parties). Under these circumstances, I would reverse the district court’s entry of summary judgment to the officers on Mr. Painter’s state law claims and remand these claims to the district court for either further consideration or remand to the state court. See Smith v. City of Enid, 149 F.3d 1151, 1156 (10th Cir.1998) (“When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.”)
I therefore DISSENT from the majority’s opinion with respect to probable cause and the dismissal of Mr. Painter’s state law claims, but I CONCUR with respect to the dismissal of Mr. Painter’s federal law claims based on qualified immunity.

. Because a bank is required by federal law to disclose its general policy regarding the availability of funds and any exceptions that it may apply on a case-by-case basis, see 12 U.S.C. § 4004(d); 12 C.F.R. § 229.16, it seems likely many bank customers will be aware generally that deposited funds may not be immediately available, but such customers may still desire more specific information from bank employees as to a particular deposit.