This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                    **NO. 33,281**

**ERIC KENNETH,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**William C. Birdsall, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
M. Victoria Wilson, Assistant Attorney General
Albuquerque, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Sergio Viscoli, Appellate Defender
David Henderson, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**VANZI, Judge.**

{1}    By his own account, Defendant Eric Kenneth first saw Leilani Kohles (Victim), doing lunges in front of her car at a gas station in Shiprock, New Mexico, on the evening of November 9, 2011. Thirty to forty-five minutes later, he was tailing her on a stretch of highway outside of Farmington, New Mexico, flashing the high beams on his work truck to signal her to pull over. He would later testify that Victim was driving erratically, and his actions were motivated out of concern for public safety. But Defendant's stated motive for stopping Victim was contested at trial and is in doubt.

{2}    The events that followed resulted in criminal charges for impersonating a police officer, kidnapping, aggravated battery, and criminal sexual contact with a deadly weapon (CSC). A jury convicted Defendant on all counts except aggravated battery. Defendant now appeals, asserting that (1) there was insufficient evidence that he committed CSC while armed; (2) the jury instructions were inadequate, resulting in fundamental error; and (3) trial counsel was ineffective in failing to request certain instructions. We affirm. There are some factual disputes about the testimony below. Because this is a memorandum opinion and because the parties are familiar with the case, we address those disputes as they arise in connection with our analysis of the issues on appeal.

## I.    DISCUSSION

## A.    Sufficiency of the Evidence

**{3}** Defendant argues that the State failed to present sufficient evidence that he committed CSC "in the cab of his truck while armed with and through the use of a deadly weapon that was, at the time, locked in the trunk of [Victim's] car." The standard of review for sufficiency of the evidence is highly deferential. *State v. Dowling*, 2011-NMSC-016, ¶ 20, 150 N.M. 110, 257 P.3d 930. We view the evidence "in the light most favorable to the [s]tate, resolving all conflicts and making all permissible inferences in favor of the jury's verdict." *Id.*

**{4}** For Defendant to be found guilty of CSC, the State had to prove, in relevant part, that:

1. [D]efendant touched or applied force to the unclothed [b]reasts of [Victim] without [her] consent;
2. [D]efendant was armed with and used a knife;
3. [D]efendant's act was unlawful[.]

The trial centered on the competing testimony of the only two witnesses at the scene: Victim, who described a frightening roadside sexual assault, and Defendant, who testified that any sexual contact was invited by Victim. The jury apparently credited Victim's version of events when it convicted Defendant on all counts except aggravated battery. "Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.3d 829. Thus, we turn to Victim's testimony in our review for sufficient evidence that Defendant was armed

when he touched Victim's unclothed breasts, and we "disregard all evidence and inferences to the contrary." *Id.*

{5}     In short, Victim testified that Defendant repeatedly flashed his lights to get her to pull over, and then he approached her driver side window. Defendant never actually told Victim he was a police officer, but his actions indicated that he was one. His white truck was similar to the police trucks driven in Victim's home state of Texas, and any uniform and badge would have been concealed beneath Defendant's heavy coat. Defendant asked Victim for her license and registration, and he asked whether she had been drinking. He ordered her to submit to a field sobriety test, and she readily agreed, expecting that she would pass.

{6}     But the sobriety test was never administered. Instead, Defendant walked Victim to the passenger side of his truck, where he "frisked" her for weapons, feeling down her legs and midsection, and eventually, reaching under her shirt and bra to fondle her breasts. When Victim turned to tell Defendant to stop, he held a knife with a long, serrated blade to her throat and pressed her hard against the passenger seat. The two struggled over the knife while Victim begged for her life. She told Defendant that she had a husband and kids. She told Defendant she did not want to die. She offered to have sex with Defendant. They agreed to lock the knife in the trunk of Victim's car. They then returned to Defendant's truck, Victim undressed, and Defendant fondled her bare breasts a second time.

4

**{7}** Defendant now asserts that "there is no rational view of the evidence that [Defendant] touched [Victim's] unclothed breasts . . . while, at the same time, he was armed with and used a knife as charged in the second element[,]" because "[Defendant] no longer had possession of the knife." In so arguing, Defendant somewhat artificially separates the use and display of the knife from its effect on Victim and the entire chain of events that followed. He thus "advances a fairly narrow interpretation of 'armed with a deadly weapon.' " *State v. Alvarez-Lopez*, 2003-NMCA-039, ¶¶ 30-31, 133 N.M. 404, 62 P.3d 1286 (defining "armed" as "easily accessible and readily available for use" because that definition deters violence by discouraging "having a deadly weapon available for use during a crime" (internal quotation marks and citation omitted)), *rev'd on other grounds*, 2004-NMSC-030, 136 N.M. 309, 98 P.3d 699.

**{8}** In any event, Defendant's argument relies on the faulty assumption that the jury convicted him of CSC based only on what he characterizes as an isolated incident of fondling—which occurred in the cab of Defendant's truck after the knife was locked away. But it is equally likely that the jury convicted Defendant based on the initial frisk at knife point. Victim specifically testified that, during the frisk, Defendant "grabbed [her] breasts" and "continually fondled" her. He patted her down, feeling "under [her] shirt, under [her] bra, and then . . . under the rim [of her bra], and then on

5

[her] breasts." When she turned to resist, Defendant "pressed [her] body against the seat of his car, pulled a mask down [over his face], and held a knife to [her] throat."

**{9}** Viewed in the light most favorable to the State, there was sufficient evidence for the jury to find that Defendant, armed with a knife, touched Victim's bare breasts without her consent during the initial frisk and used the knife to cow her into submission when she resisted his touch. We are confident that these facts—independent of any further contact that occurred while the knife was locked in Victim's trunk—are sufficient to support Defendant's conviction for CSC. *See State v. Salazar*, 1997-NMSC-044, ¶ 32, 123 N.M. 778, 945 P.2d 996 ("[A] jury's general verdict will not be disturbed in such a case where substantial evidence exists in the record supporting at least one of the theories of the crime presented to the jury.").

**B.    Jury Instructions**

**{10}** Defendant next argues that the district court committed fundamental error when it did not *sua sponte* instruct the jury on the defenses of citizen's arrest and self-defense and when it did not issue an instruction on false imprisonment as a lesser included offense to kidnapping. "The rule of fundamental error applies only if there has been a miscarriage of justice, if the question of guilt is so doubtful that it would shock the conscience to permit the conviction to stand, or if substantial justice has not been done." *State v. Sutphin*, 2007-NMSC-045, ¶ 16, 142 N.M. 191, 164 P.3d 72 (internal quotation marks and citation omitted). Fundamental error generally occurs

6

when the trial court fails to instruct the jury on an essential element, including unlawfulness, which is the element negated by self-defense. *See State v. Benally*, 2001-NMSC-033, ¶¶ 18-20, 131 N.M. 258, 34 P.3d 1134. "However, fundamental error does not occur if the jury was not instructed on an element not at issue in the case." *Sutphin*, 2007-NMSC-045, ¶ 16. Nor does it occur when, looking at the individual facts and circumstances, there is "no distinct possibility that the jury convicted [the d]efendant without finding all elements beyond a reasonable doubt." *Id.* ¶ 20 (omission, internal quotation marks, and citation omitted).

**C.    Citizen's Arrest**

{11}    Relying on *State v. Johnson*, Defendant argues that we must reverse his conviction for kidnapping because the district court did not submit an instruction on citizen's arrest to the jury. 1996-NMSC-075, ¶¶ 19-20, 122 N.M. 696, 930 P.2d 1148. Citing *State v. Slayton*, the State counters, in part, that "citizen's arrest was not a legally valid defense because 'citizens' arrests for DWI are not legal.' " 2009-NMSC-054, ¶ 26, 147 N.M. 340, 223 P.3d 337.

{12}    "The citizen's arrest defense is based on a person's common-law right to arrest for a breach of the peace committed in his presence, as well as for a felony."*Johnson*, 1996-NMSC-075, ¶ 7 (internal quotation marks and citation omitted). In *Johnson*, our Supreme Court noted that some states have "enacted statutes that placed greater restrictions on the right of citizen's arrest in an attempt to discourage intermeddlers

7

in the exercise of law enforcement." *Id.* ¶ 15 (internal quotation marks and citation omitted). Since the Court in *Johnson* believed that "[t]here ha[d] been no changes in the New Mexico law of citizen's arrest either by statute or at common law," it applied the century-old, common law requirements for the defense from *Territory v. McGinnis*, 1900-NMSC-019, 10 N.M. 269, 61 P. 208, *overruled on other grounds by State v. Deltenre*, 1966-NMSC-187, 77 N.M. 497, 424 P.2d 782. *Johnson*, 1996-NMSC-075, ¶¶ 14-15.

{13}     In the traffic context, this Court relied on *Johnson* when we upheld a deputy marshal's traffic stop conducted outside of his jurisdictional territory as an exercise of the private right to make a citizen's arrest. *See State v. Arroyos*, 2005-NMCA-086, ¶¶ 5-9, 137 N.M. 769, 115 P.3d 232, *overruled by Slayton*, 2009-NMSC-054. But *Arroyos* was subsequently overruled precisely because "the common law right to citizen's arrest for suspected violations of the Motor Vehicle Code and other misdemeanor motor vehicle laws has been abrogated by the Legislature." *Slayton*, 2009-NMSC-054, ¶ 26 (citing NMSA 1978, § 66-8-124(A) (2007) ("No person shall be arrested for violating the Motor Vehicle Code . . . or other law relating to motor vehicles . . . except by a commissioned, salaried peace officer who, at the time of arrest, is wearing a uniform clearly indicating the peace officer's official status.")).

{14}     Thus, a statutory limit to the defense of a citizen's arrest that was not found in *Johnson* was subsequently found in *Slayton* and, as such, "citizens' arrests for DWI

8

are not legal." *Slayton*, 2009-NMSC-054, ¶ 26. In light of Section 66-8-124(A) and the surrounding provisions of the Motor Vehicle Code, all cases suggesting "that a private citizen . . . may make a citizen's arrest for suspected violations of motor vehicle laws," were overruled. *Slayton*, 2009-NMSC-054, ¶ 26. We therefore reject any contention that the district court committed fundamental error when it did not issue a defense that has been abrogated by the Legislature under the specific circumstances presented here. Simply put, citizen's arrest was not at issue as a matter of law.

**D.    Self-Defense**

{15}    Defendant next challenges his conviction for aggravated assault with a deadly weapon. He now asserts that he was entitled to a self-defense instruction that he did not request because his testimony tended to negate the unlawfulness element of that offense. "[W]hen the jury instructions have not informed the jury that the [s]tate had the burden to prove an essential element, such as unlawfulness or an absence of self-defense, convictions have been reversed for fundamental error." *State v. Swick*, 2012-NMSC-018, ¶ 55, 279 P.3d 747. In evaluating Defendant's contention, we first look to the facts adduced at trial to determine whether self-defense was actually at issue. *Sutphin*, 2007-NMSC-045, ¶¶ 16, 20.

{16}    "A defendant is not entitled to a self-defense instruction unless it is justified by sufficient evidence on every element of self-defense." *State v. Rudolfo*, 2008-NMSC-

036, ¶ 17, 144 N.M. 305, 187 P.3d 170. One of the elements of self-defense (non-deadly force) requires that: "The defendant was in fact put in fear of immediate bodily harm and [ ___ ] because of that fear[.]" UJI 14-5181 NMRA. The Use Notes for the uniform jury instruction provide that the bracketed space is to be filled in with a description of "the act of [the] defendant; e.g. 'struck Richard Roe,' 'choked Richard Roe.' " *See* Use Note 3. Defendant argues on appeal that his testimony at trial "supported a reasonable doubt that [he] struggled over the knife in the apprehension that he otherwise would be attacked." But Defendant was not convicted of aggravated assault with a deadly weapon for struggling over the knife. To find Defendant guilty on that count, the jury was specifically tasked to find, in pertinent part, that "[D]efendant tried to touch or apply force to [Victim], by holding a knife to her throat" and that he did so in "a rude, insolent or angry manner[.]" Thus, returning to the uniform jury instruction and its Use Note, a proper instruction on self-defense to the charge of aggravated assault with a deadly weapon in this case would read something along the lines of: "[D]efendant was in fact put in fear of immediate bodily harm and [held a knife to Victim's throat] because of that fear[.]"

{17}    There was no evidence at trial that Defendant held a knife to Victim's throat in fear of immediate bodily harm. Defendant testified that he never intended to harm victim; he never held a knife to Victim's throat; he never threatened her with a knife; and, in fact, his knife remained sheathed during the whole encounter. The defense

10

strategy at trial revolved entirely—and unsuccessfully—around discrediting Victim, who defense counsel portrayed at closing argument as a "drama queen" and a sadomasochist who was "a little into excitement."

**{18}** According to Defendant's version of events, Victim flirted with him after he pulled her over. He believed that Victim was "playing a game with [him]" when he felt "under her blouse," and "into her breast area." Victim then inexplicably "flipped out" and lunged for Defendant's sheathed knife that was resting between the seats of his truck. Defendant, now fearing for his life, grabbed Victim's hand to stop her from unsheathing the blade and cutting him. They reached a stalemate in the struggle for the knife and eventually agreed to lock it in Victim's trunk.

**{19}** We conclude that the district court's failure to instruct the jury on self-defense was not fundamental error (or error at all) because self-defense to the charge of aggravated assault with a deadly weapon was not actually at issue. *Rudolfo*, 2008-NMSC-036, ¶ 17 ("A defendant is not entitled to a self-defense instruction unless it is justified by sufficient evidence on every element of self-defense."); *Sutphin*, 2007-NMSC-045, ¶ 16 ("[F]undamental error does not occur if the jury was not instructed on an element not at issue in the case."). There were exactly two versions of events at trial, and neither suggested that Defendant held a knife to Victim's throat in self-defense. Either Defendant innocently struggled with Victim over a blade that was sheathed "the whole time," as Defendant suggested, or he "pressed [her] body against

11

the seat of his car, pulled a mask down [over his face], and held a knife to [her] throat[,]" as Victim testified—and as the jury apparently found. "We will not fragment the testimony to such a degree as to distort it in order to construct a view of the evidence which would support the giving of the instruction." *State v. Gaitan*, 2002-NMSC-007, ¶ 24, 131 N.M. 758, 42 P.3d 1207 (alteration, internal quotation marks, and citation omitted). We will certainly not do so in the limited context of fundamental error review.

{20} Since Defendant apparently wanted the jury to believe that he never held a knife to Victim's throat, it is unsurprising that defense counsel did not ask for a jury instruction that would have stated, in part, that "[D]efendant acted in self-defense if . . . [he] was in fact put in fear of immediate bodily harm and [held a knife to Victim's throat] because of that fear[.]" UJI 14-5181. The district court had no obligation to *sua sponte* instruct the jury on a defense that was inconsistent with Defendant's own testimony and with the general defense strategy at trial.

**E.    False Imprisonment**

{21} Defendant argues that it was fundamental error not to instruct the jury on false imprisonment as a lesser included offense to kidnapping. Failure to give a lesser included offense instruction is reversible error when (1) the lesser offense is included in the greater offense, (2) there is evidence tending to establish the lesser offense, (3) that evidence establishes that the lesser offense was the highest degree of the crime

12

committed, and (4) the defendant requested the instruction. *State v. Jernigan*, 2006-NMSC-003, ¶ 21, 139 N.M. 1, 127 P.3d 537.

{22} The first two prongs are readily satisfied. False imprisonment is "intentionally confining or restraining another person without his consent and with knowledge that he has no lawful authority to do so." NMSA 1978, § 30-4-3 (1963). Kidnapping is "the unlawful taking, restraining, transporting or confining of a person, by force, intimidation or deception, with intent . . . to inflict death, physical injury[,] or a sexual offense on the victim." NMSA 1978, § 30-4-1(A)(4) (2003). For our purposes, the specific intent to inflict a sexual offense on the victim is the element that separates kidnapping from false imprisonment, making "false imprisonment . . . a subset of kidnapping." *State v. Sotelo*, 2013-NMCA-028, ¶ 12, 296 P.3d 1232. It is undisputed that there was sufficient evidence to convict Defendant of either crime.

{23} With respect to the third prong, Defendant argues that there is a rational view of the evidence that Defendant restrained Victim because he wanted to see if she was driving while impaired and not because he initially intended to commit a sexual offense. According to Defendant, the jury could have believed his testimony about his motive for the stop and still convicted him of CSC based on his subsequent decision "to make sexual overtures" towards Victim. This view of the evidence, Defendant asserts, would establish that false imprisonment was the highest degree of the crime

committed because Defendant did not form the specific intent to commit a sexual offense until "after he had already restrained [Victim's] freedom of travel[.]"

{24}     Defendant's argument is unpersuasive. The offense of kidnapping "continues until the victim has been released from confinement." *State v. Hutchison*, 1983-NMSC-029, ¶ 32, 99 N.M. 616, 661 P.2d 1315. For instance, our Supreme Court has held that "[a] conviction for kidnapping with the intent to hold for services is sufficient if the kidnapper rapes the victim during the course of the abduction[,]" and "[i]t is immaterial whether or not the intent to rape existed at the beginning of the act." *Id.* Assuming, for the purposes of evaluating Defendant's argument, that the jury could have rationally found that he committed the unlawful restraint necessary for false imprisonment when he pulled Victim over, that restraint plainly continued at least until Defendant touched Victim's unclothed breast during the initial frisk.

{25}     Defendant testified that he took Victim to the passenger side of his truck to "check her for weapons" knowing that he had no legal authority to do so, and Victim testified that she complied with Defendant's orders because she thought he was a police officer. Thus, having necessarily concluded that Defendant formed the intent to commit CSC (a sexual offense) at some point during Victim's continuing restraint, no rational jury could have simultaneously concluded that Defendant never formed the specific intent that distinguishes kidnapping from false imprisonment.

14

{26} We also cannot ignore the fact that Defendant's assertion of fundamental error is inherently suspect given the fourth prong of our lesser included offense test, which requires that Defendant requested the instruction. *See Jernigan*, 2006-NMSC-003, ¶ 21. While some of the self-defense cases discussed above have recognized an exception to preservation requirements when a court fails to instruct the jury on an essential element of an offense that is factually at issue, our courts "have declined to apply the doctrine of fundamental error to a defendant's choice of whether to have the jury instructed on lesser included offenses." *State v. Foster*, 1999-NMSC-007, ¶ 54, 126 N.M. 646, 974 P.2d 140. We cannot locate a prior case, and Defendant has not cited one that has ever reversed a trial court for failing to issue an unrequested, lesser included offense instruction.

{27} In fact, the cases typically consider the decision not to request such an instruction to be an " 'all-or-nothing' trial strategy" which will not be second guessed on appeal. *State v. Villa*, 2004-NMSC-031, ¶ 14, 136 N.M. 367, 98 P.3d 1017; *State v. Boeglin*, 1987-NMSC-002, ¶ 14, 105 N.M. 247, 731 P.2d 943 ("[T]he defendant is free to make strategic choices regarding the manner in which he will or will not avail himself of procedural safeguards afforded by the law, and he generally will be bound by those choices."). False imprisonment is a fourth degree felony with a potential penalty of eighteen months imprisonment, *see* NMSA 1978, § 31-18-15(A)(10) (2007), and Defendant would have a perfectly valid tactical incentive not to want the

jury instructed on that offense. His testimony challenged the intent required for kidnapping, and, had the jury believed him, he would have been acquitted. An "ill-advised strategic decision is not the stuff of which fundamental error is made." *State v. Foxen*, 2001-NMCA-061, ¶ 12, 130 N.M. 670, 29 P.3d 1071. Even if there was some rational view of the evidence in which Defendant could have been convicted of false imprisonment and not kidnapping, we would not find fundamental error under these circumstances.

**F.      Ineffective Assistance of Counsel**

{28}     Defendant's final argument is that his right to effective assistance of counsel was violated when trial counsel failed to request the jury instructions discussed above. To make a prima facie case of ineffective assistance of counsel, a defendant must show that (1) counsel's performance fell below that of a reasonably competent attorney; and (2) the defendant was prejudiced by the deficient performance. *State v. Cordova*, 2014-NMCA-081, ¶ 9, 331 P.3d 980. Defense counsel is "presumed competent." *State v. Jacobs*, 2000-NMSC-026, ¶ 48, 129 N.M. 448, 10 P.3d 127.

{29}     Since we have concluded that the evidence at trial would not have warranted any of the jury instructions discussed in this Opinion, trial counsel's failure to request those instructions was neither deficient nor prejudicial.

**II.      CONCLUSION**

{30}     Defendant's convictions are affirmed.

16

{31} **IT IS SO ORDERED.**

_____
**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**M. MONICA ZAMORA, Judge**