IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2009-NMSC-054

Filing Date: November 6, 2009

Docket No. 31,244

STATE OF NEW MEXICO,

    Plaintiff-Respondent,

v.

MICHAEL SLAYTON,

    Defendant-Petitioner.

ORIGINAL PROCEEDING ON CERTIORARI
Steven L. Bell, District Judge

Henninghausen & Olsen, L.L.P.
Kenneth B. Wilson
Roswell, NM

for Petitioner

Gary K. King, Attorney General
Martha Anne Kelly, Assistant Attorney General
Santa Fe, NM

for Respondent

OPINION

CHÁVEZ, Chief Justice.

{1}    After rear-ending a vehicle and leaving the scene of the accident, Defendant Michael Slayton was handcuffed in his driveway by a police service aide (PSA), pending the arrival of police officers to investigate Defendant's involvement in the accident. As a result of the investigation, Defendant was charged with aggravated DWI, second offense, contrary to NMSA 1978, Section 66-8-102 (1953, prior to 2007 amendments). At trial Defendant sought to suppress all evidence following his detention and arrest because the PSA who detained him was employed as a non-commissioned officer of the Roswell Police

1

Department and did not have the statutory authority to detain or arrest an individual suspected of DWI. Defendant contends that the PSA's lack of statutory authority to detain or arrest him is an unreasonable seizure under the Fourth Amendment of the United States Constitution, entitling him to the remedy of suppression. While we agree that the PSA did not have the authority to detain or arrest an individual suspected of a crime, we disagree that a state actor's unauthorized seizure of a person suspected of committing a crime is per se a violation of the Fourth Amendment. Because Defendant has not argued either that the unauthorized seizure violated the New Mexico Constitution or that the Legislature has made suppression the remedy for an unauthorized arrest, we do not address those issues. Finally, we disagree with Defendant's final argument on appeal that his consent to a blood test was coerced. Therefore, we affirm Defendant's conviction.

## I. BACKGROUND

{2} On the afternoon of January 7, 2007, PSA Ali Blake (Blake) responded to a traffic accident in Roswell, New Mexico. Blake observed that a red vehicle had been rear-ended by a vehicle with white paint, and witnesses at the scene informed her that the driver of a white truck rear-ended the vehicle and left the scene. Blake obtained the license plate of the white truck from a witness and was told in which direction the truck was traveling as it left the scene. Blake located the truck parked in Defendant's driveway with Defendant still inside, either unconscious or asleep.

{3} Blake knocked on the truck's window, awakening Defendant and ordering him to get out of the truck. When Defendant got out of his truck, Blake detected an odor of alcohol coming from him and noticed several boxes of ammunition on the truck's floorboard. Once he was out of the truck, she asked Defendant to get on his knees. Instead of complying, Defendant tried to walk toward his house but tripped and fell, injuring his nose. Citing concerns for both her safety and that of Defendant, Blake handcuffed Defendant and called police officers and medical assistance personnel to the scene.

{4} Roswell Police Officer Scott Stevenson responded to Blake's request for assistance. Upon arriving at Defendant's house, Officer Stevenson approached Defendant, who was sitting on the ground. He noticed that Defendant appeared disoriented or confused, had bloodshot, watery eyes, and slurred speech. Officer Stevenson reported that Defendant admitted he had been drinking vodka "all day" and driving his truck, but he could not remember the crash or why his nose was bleeding. Defendant was taken to the hospital, where Officer Stevenson formally placed him under arrest for DWI. Approximately four hours after the accident, Defendant consented to have his blood drawn to test his blood alcohol content (BAC). His BAC was 0.36 grams of alcohol per 100 milliliters of blood.

{5} Defendant filed three motions to suppress evidence in district court, two of which are the subject of this appeal. He moved the court to suppress all evidence obtained by the police after his detention or arrest because "[t]he arrest and detention of Defendant [were] without proper police authority" and were therefore illegal. He also moved to suppress all

evidence relating to the blood alcohol draw because it was taken without Defendant's voluntary consent. The district court denied these two motions. Defendant entered a conditional plea of no contest to aggravated DWI, second offense, a misdemeanor, preserving his right to appeal the "issues surrounding his motions to suppress/unlawful arrest/blood alcohol draw without consent[.]" He then appealed to the Court of Appeals.

**{6}** In a divided memorandum opinion, the Court of Appeals affirmed the trial court's order denying Defendant's motions to suppress. *State v. Slayton*, No. 27,892, slip op. at 2 (N.M. Ct. App. June 30, 2008). The majority held that Defendant failed to preserve the issue of Blake's authority to detain him because he had only argued to the district court that Blake was without the authority to arrest him. *Id.* at 6-7. The Court concluded that Blake's detention of Defendant did not amount to an arrest, and it therefore did not need to address whether Blake had the authority to arrest. *Id.* at 12. Regarding the issue of Defendant's consent to the blood draw, the Court held that Defendant was not forced to submit to the test, and therefore the blood draw evidence was not subject to suppression. *Id.* at 12-13.

**{7}** The dissent concluded that Defendant had preserved the issue of Blake's illegal detention of him. *Id.* at 17. In any case, the dissenting judge would have held that Defendant was arrested by the PSA, who was not a commissioned police officer. *Id.* at 22 (Vigil, J., dissenting). Judge Vigil explained that:

> The majority's reasoning, with which I disagree, allows it to not address the consequences of an illegal detention or arrest by a PSA officer. I would address the merits of whether Defendant's detention and arrest were legal, and if they were not, the consequence. One consequence might be that Defendant's consent to the blood test was not sufficiently attenuated from PSA Blake's unconstitutional conduct. Without such an analysis, I do not agree with the majority's conclusion concerning Defendant's consent to the blood test.

*Id.* at 22-23. This Court granted certiorari and now addresses the two suppression issues. *State v. Slayton*, 2008-NMCERT-008, 145 N.M. 255, 195 P.3d 1267.

## II. DISCUSSION

### A. DEFENDANT FAIRLY INVOKED A RULING ON THE ISSUE OF HIS DETENTION

**{8}** The State asserts that Defendant argued only to the district court that Blake was without authority to *arrest* him, a question separate and distinct from a determination of whether Blake was authorized to *detain* him. It contends that the district court's order embodied only two rulings: (1) that Blake did not arrest Defendant; and (2) that Defendant's detention was reasonable under the Fourth Amendment. According to the State, the absence of the district court's express ruling on Blake's *authority to detain* Defendant demonstrates

3

Defendant's failure to adequately preserve that argument for consideration below.

**{9}**    Defendant's argument in the district court was that Blake's actions, however characterized, were unreasonable within the context of the Fourth Amendment. He specifically argued that either "the arrest *or detention* of Defendant" was "illegal," and therefore all evidence obtained after his seizure should be suppressed. In addition to his broad argument that his detention was unreasonable, Defendant also specifically argued that "[t]he arrest *and detention* of Defendant [were] without proper *police authority*."

**{10}**    While Defendant's argument could have been clearer, we believe that it was sufficient to invoke a ruling from the district court on the issue of Blake's authority to detain him. *See* Rule 12-216(A) NMRA ("To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked[.]"). Defendant focused the district court's attention on the fact that Blake was not a commissioned police officer, and therefore lacked authority to detain or arrest him, making his seizure unreasonable within the context of the Fourth Amendment. Indeed, the district court denied "Defendant's Motion to Suppress based upon an alleged unlawful arrest *and detention* by police officers[.]" Therefore, we conclude that Defendant did preserve the issue of whether Blake had the authority to detain him and, if not, whether exceeding that authority violated the Fourth Amendment's protections against unreasonable seizure.

## B.    BLAKE WAS WITHOUT STATUTORY AUTHORITY TO EITHER DETAIN OR ARREST DEFENDANT

**{11}**    "A ruling on a motion to suppress evidence presents a mixed question of law and fact." *State v. Rivera*, 2008-NMSC-056, ¶ 10, 144 N.M. 836, 192 P.3d 1213. This Court reviews factual findings under a substantial evidence standard, viewing the facts in the light most favorable to the prevailing party, and we review de novo whether the district court correctly applied the law to the facts. *Id.* In this case, the district court made formal findings of fact in its order denying Defendant's motions. Neither party asserts that these findings were made in error, and the pertinent factual findings are supported by the record. We therefore accept these findings as conclusive. *Davis v. Devon Energy Corp.*, 2009-NMSC-048, ¶ 13, ___ N.M. ___, 218 P.3d 75 ("When there are no challenges to the district court's factual findings, we accept those findings as conclusive.").

**{12}**    Defendant's argument that his seizure by Blake was unreasonable within the context of the Fourth Amendment rests entirely on the assertion that Blake lacked the statutory authority to detain or arrest anyone suspected of committing a crime. We believe that Defendant would concede that if a commissioned police officer had seized him, his detention and arrest would have been reasonable under the Fourth Amendment. Thus, Defendant's argument presents two separate issues: (1) whether Blake had the authority to seize Defendant, because if she did, her actions were presumably reasonable under the Fourth Amendment; and (2) if she did not have such authority, whether her lack of authority is an unreasonable seizure under the Fourth Amendment, which would entitle Defendant to

4

application of the exclusionary rule. We address these arguments in turn.

**{13}** The State argues that there is nothing in the record to show that Blake's actions were unauthorized because Blake had the authority to seize Defendant for two reasons: (1) she may be considered to have the authority to arrest by virtue of her status as a "peace officer" under this Court's decision in *State v. Ogden*, 118 N.M. 234, 245, 880 P.2d 845, 856 (1994); and (2) she was acting on the express authority of the Roswell Police Department. We disagree with both contentions.

**{14}** We are not persuaded by the State's first argument, which relies on *Ogden* as support for Blake's authority to arrest Defendant. In *Ogden* we determined that a City of Farmington Community Service Officer (CSO) was a "peace officer" within the context of the aggravating circumstances statute, NMSA 1978, Section 31-20A-5(A) (1981). 118 N.M. at 245, 880 P.2d at 856. We concluded that by enacting the aggravating circumstances statute, the Legislature intended "to protect a broader category of law enforcement officers than only police officers." *Id.* at 244, 880 P.2d at 855. Because "CSOs are charged with the duty to maintain public peace or order" and "all of their responsibilities are of a peace-keeping nature[,]" we held that the Legislature intended to include CSOs in the definition of "peace officer" for the purpose of Section 31-20A-5(A). *Ogden*, 118 N.M. at 245-46, 880 P.2d at 856-57.

**{15}** While we recognized in *Ogden* that CSOs and, by extension, PSAs may perform some police functions similar to those of commissioned officers, we did not endeavor to identify the scope of these non-commissioned officers' duties. In fact, in holding that the aggravated circumstances statute protects a broader category of "peace officer" than simply commissioned police officers, we implicitly recognized that CSOs, PSAs, and other auxiliary officers or service aides are sometimes treated differently by virtue of their lack of commission. In any case, the analysis of whether a PSA possesses the authority to seize a person suspected of violating the Motor Vehicle Code or other laws regarding motor vehicles presents a distinct issue of statutory construction that is only tangentially related to the aggravated circumstances statute we addressed in *Ogden*. Therefore, although Blake was likely a "peace officer" within the context of the aggravating circumstances statute, as a non-commissioned employee of the Roswell Police Department, her authority to arrest individuals suspected of violating the Motor Vehicle Code has been limited by the Legislature.

**{16}** We are also not persuaded by the State's second argument that Blake was acting with the express authority of the Roswell Police Department. Any authority granted to Blake by the City of Roswell to arrest individuals suspected of violating the Motor Vehicle Code would be nullified by statutory authority to the contrary. *See Stennis v. City of Santa Fe*, 2008-NMSC-008, ¶ 21, 143 N.M. 320, 176 P.3d 309 ("[A] municipality may adopt ordinances or resolutions not inconsistent with state law. A municipal ordinance does not conflict with state law unless the ordinance permits an act the general law prohibits, or vice versa." (internal quotation marks and citations omitted)). The Legislature has expressly

5

stated that "[n]o person shall be arrested for violating the Motor Vehicle Code [66-1-1 NMSA 1978] or other law relating to motor vehicles punishable as a misdemeanor except by a commissioned, salaried peace officer who, at the time of arrest, is wearing a uniform clearly indicating the peace officer's official status." NMSA 1978, § 66-8-124(A) (1961, prior to 2007 amendments). The Legislature intended that only commissioned officers may arrest a person who is suspected of violating the Motor Vehicle Code. Therefore, any municipal grant of authority to the contrary would "permit[] an act the general law prohibits" and would be impermissible. *Stennis*, 2008-NMSC-008, ¶ 21 (internal quotation marks and citations omitted).

**{17}** Here, it is undisputed that Blake was not a commissioned police officer. It is also undisputed that Defendant was charged with second offense aggravated DWI, contrary to Section 66-8-102, a misdemeanor. *See* § 66-8-102(F) (stating that second offense aggravated DWI is punishable by up to 364 days in jail); NMSA 1978, § 30-1-6(B) (1963) ("A crime is a misdemeanor if it is so designated by law or if upon conviction thereof a sentence of imprisonment in excess of six months but less than one year is authorized."). Therefore, according to Section 66-8-124(A), Blake was without statutory authority to arrest Defendant.

## C.    FOR PURPOSES OF SECTION 66-8-124(A), "ARREST" INCLUDES A TEMPORARY DETENTION

**{18}** What constitutes an arrest under the provisions of Section 66-8-124(A) is pivotal to our determination in this case. In its opinion, the Court of Appeals devotes a significant amount of time distinguishing an arrest from a temporary detention and delineating when an arrest has occurred. *Slayton*, No. 27,892, slip op. at 9-12. The Court of Appeals directs its focus to *State v. Werner*, 117 N.M. 315, 871 P.2d 971 (1994), to determine at what point "'an investigatory seizure is invasive enough to constitute an arrest[.]'" *Slayton*, No. 27,892, slip op. at 9 (quoting *Werner*, 117 N.M. at 317, 871 P.2d at 973). Though the definition of arrest can be narrowly construed to include only custodial arrests, for the purpose of determining which actions are governed by the Motor Vehicle Code, we have interpreted "arrest" broadly to include not only custodial arrests but also temporary detentions.

**{19}** As used in Section 66-8-124(A), the term "arrest" does not refer solely to custodial arrest or incarceration; it also includes a "temporary detention." *See State v. Ochoa,* 2008-NMSC-023, ¶ 15, 143 N.M. 749, 182 P.3d 130 (construing the misdemeanor arrest rule and Section 66-8-123, "[w]e hold that the Court of Appeals improperly applied New Mexico's misdemeanor arrest rule to this case, because the 'arrest' at issue was an investigatory stop for a seatbelt violation"); *State v. Bricker*, 2006-NMCA-052, ¶ 9, 139 N.M. 513, 134 P.3d 800 ("While the statute [NMSA 1978, Section 66-8-123 (1978, as amended through 1989)] uses the words 'arrest' and 'custody,' we believe the Legislature intended those terms to refer to a temporary detention rather than a traditional custodial arrest in which a person is arrested and taken to the police station for booking."); *State v. Archuleta,* 118 N.M. 160, 163, 879 P.2d 792, 795 (Ct. App. 1994) (construing Section 66-8-124(A), the Court

6

developed two tests to determine if the officer is in "uniform"; the second test evaluated "whether the person *stopped and cited* either personally knows the officer or has information that should cause him to believe the person making the stop is an officer with official status") (emphasis added); *see also United States v. Gonzalez,* 763 F.2d 1127, 1130 n.1 (10th Cir. 1985) (construing Section 66-8-123: "Despite the statute's use of the words 'arrest' and 'custody,' when a New Mexico police officer stops a car merely to issue a traffic summons for a minor speeding infraction, we think that for Fourth Amendment purposes that stop is more in the nature of an investigative detention than a traditional arrest.").

**{20}** We have never interpreted the Legislature's intent to restrict the term "arrest" in Section 66-8-124 only to custodial arrests, and we believe that under Chapter 66 of the New Mexico statutes, unless otherwise noted, "arrest" includes temporary detentions. *See State v. Marquez*, 2008-NMSC-055, ¶ 11, 145 N.M. 1, 193 P.3d 548 ("Nothing in the Fresh Pursuit Act indicates that the Legislature intended 'authority to arrest' to be limited to a custodial arrest. In fact, reference to other statutes indicates that the Legislature intended no such limit. Under NMSA 1978, Section 66-8-123(A) (1989), which provides for citations in lieu of custodial arrest for certain violations of the Motor Vehicle Code, 'a person is arrested' for the offense, 'the arresting officer' prepares the citation, 'the arrested person' signs the citation, and 'the arrested person' receives a copy of the citation before being released." (alterations omitted)); *Archuleta,* 118 N.M. at 162, 879 P.2d at 794 (construing Section 66-8-124(A), "[i]t seems clear enough that the intention of the legislature in requiring the officer to wear a uniform plainly indicating his official status was to enable the motorist to be certain that the officer who stops him is, in fact, a police officer"). Therefore, legislative intent and previous New Mexico case law leads us to conclude that temporary detentions are covered under the term "arrest" as used in Chapter 66 as well as custodial arrests, and Blake's actions in detaining Defendant constitute an arrest under Section 66-8-124(A). As a result, we need not address the de facto arrest analysis employed by the Court of Appeals in this case.

**D.     BLAKE'S SEIZURE OF DEFENDANT WAS STATE ACTION**

**{21}** Having determined that Blake did not have statutory authority to either detain or arrest Defendant, we now address Defendant's contention that Blake's lack of authority resulted in an unreasonable seizure under the Fourth Amendment. The State argues that if Blake was acting without such statutory authority, she must have been acting as a private citizen, and she was therefore authorized to arrest Defendant for a breach of the peace. *See State v. Arroyos*, 2005-NMCA-086, ¶ 5, 137 N.M. 769, 115 P.3d 232 ("Any person . . . may arrest another upon good-faith, reasonable grounds that a felony had been or was being committed, or a breach of the peace was being committed in the person's presence."); *see also State v. Emmons*, 2007-NMCA-082, ¶ 15, 141 N.M. 875, 161 P.3d 920 (noting that this Court has "specifically declined to favor citizen's arrest for breaches of the peace, stemming from [our] concern that such an expansion of citizen power might likely lead to more breaches of the peace and encourage vigilantism"). We understand the State to be arguing that if Blake was acting in her capacity as a private citizen, then there was no state action for

purposes of the Fourth Amendment. *See State v. Murillo*, 113 N.M. 186, 188-89, 824 P.2d 326, 328-29 (Ct. App. 1991) ("The courts of New Mexico, like other jurisdictions, have accepted the long-standing rule that the protections of the Fourth Amendment do not apply to private individuals acting for their own purposes." (footnote omitted)). We disagree.

**{22}**     It is undisputed that Blake was acting in her capacity as an employee of the Roswell Police Department when she investigated the traffic accident. She was dispatched to the scene of the accident by the Roswell Police Department, and consistent with this directive, searched for and found Defendant sitting in his truck in his driveway. However, her authority to detain Defendant is less clear. Blake admitted that she did not have the authority to arrest Defendant, but the record does not clearly reveal whether she had the authority to detain him until a commissioned officer arrived to investigate the accident and make any necessary arrests. Nevertheless, Blake stated that the Roswell Police Department employed her to "do a lot of the same work that a certified officer would do," including investigating traffic accidents and crime scenes. In fact, PSAs such as Blake wear uniforms and drive marked patrol cars.

**{23}**     While on this record we cannot definitively determine that Blake was acting within the express authority granted to her by the Roswell Police Department, we nonetheless conclude that Blake's actions were state actions because she was acting as an agent of the Roswell Police Department when she detained Defendant in his driveway. "Although the Fourth Amendment does not apply to a search or seizure, even an arbitrary one, effected by a private party on his own initiative, the Amendment protects against such intrusions if the private party acted as an instrument or agent of the Government." *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 614 (1989). As we recently stated in *State v. Santiago*, to determine whether a person is acting as an agent of the government, we consider "(1) whether the government knew of and acquiesced in the intrusive conduct, and (2) whether the party performing the search intended to assist law enforcement efforts or to further his [or her] own ends." 2009-NMSC-045, ¶ 18, ___ N.M. ___, 217 P.3d 89 (internal quotation marks and citation omitted). We apply this same test to determine whether a seizure was state action. *See United States v. Snowadzki*, 723 F.2d 1427, 1429 (9th Cir. 1984) (applying the same factors "[t]o determine whether a private person acted as a government agent in an illegal search and seizure").

**{24}**     The sole reason Blake undertook to investigate and ultimately detain Defendant was due to her employment by the Roswell Police Department and her directive to investigate the accident. Although Blake exceeded the scope of her authority in detaining Defendant while waiting for commissioned officers to arrive, the government initiated her investigation and acquiesced in its results. Furthermore, acting in her capacity as an employee of the Roswell Police Department, Blake's intentions were to assist the government in arresting Defendant for DWI. Thus, although Blake was without statutory authority to detain and arrest Defendant, she nonetheless was acting as an agent of the government when she seized him. *Cf. People v. Rosario*, 585 N.E.2d 766, 768-69 (N.Y. 1991) (non-commissioned auxiliary officers are "fellow officers" for the purpose of providing information for

commissioned officers to make warrantless arrests that comport with the requirements of the Fourth Amendment). We now must determine whether her lack of statutory authority has Fourth Amendment implications.

**{25}** Before doing so, however, we are compelled to address a conflict in our case law that arises by virtue of our holding in this case that only commissioned peace officers may seize persons suspected of violating provisions of "the Motor Vehicle Code . . . or other law relating to motor vehicles punishable as a misdemeanor[.]" Section 66-8-124(A). In *Arroyos*, the Court of Appeals held that a deputy marshal acting outside of the territorial jurisdiction of his commission was authorized to detain a driver for suspected DWI, a misdemeanor breach of the peace. 2005-NMCA-086, ¶¶ 2-5, 9, 11. The Court reached its conclusion by construing NMSA 1978, Section 3-13-2 (1988), which limited the marshal's territorial jurisdiction as "not divesting the officers of their common law right as citizens to make arrests or detentions." *Id.* ¶ 8. *Arroyos* did not address any provisions of the Motor Vehicle Code that might affect a citizen's authority to arrest another person for suspected violations of that statute, a matter we addressed earlier in this opinion.

**{26}** As we explained above, the common law right to citizen's arrest for suspected violations of the Motor Vehicle Code and other misdemeanor motor vehicle laws has been abrogated by the Legislature. *See* NMSA 1978, § 66-1-4.14(J) (1990, as amended through 1999) ("'police or peace officer' means every officer authorized to direct or regulate traffic or to make arrests for violations of the Motor Vehicle Code"); § 66-8-124(A) ("No person shall be arrested for violating the Motor Vehicle Code . . . or other law relating to motor vehicles punishable as a misdemeanor except by a commissioned, salaried peace officer who, at the time of arrest, is wearing a uniform clearly indicating the peace officer's official status."). DWI is a violation of the Motor Vehicle Code. Section 66-8-102. Therefore, citizens' arrests for DWI are not legal. To the extent that *Arroyos* suggests that a private citizen, including a commissioned peace officer acting outside the scope of his or her territorial jurisdiction, may make a citizen's arrest for suspected violations of motor vehicle laws, it and any other cases so holding are overruled.

**{27}** We recognize that NMSA 1978, Section 66-8-127 (1978) suggests that the Legislature may have intended to retain citizens' common law ability to arrest for misdemeanors committed in their presence by providing that "the procedure prescribed [in Sections 66-8-122 through -125] is not exclusive of any other method prescribed by law for the arrest and prosecution of a person violating these laws." However, construing Section 66-8-127 to allow citizens' arrests would render meaningless the mandate in Section 66-8-124(A) that a peace officer must make arrests for violations of the Motor Vehicle Code and other laws relating to motor vehicles that are punishable as misdemeanors. Because "[w]e will reject an interpretation of a statute that makes parts of it . . . meaningless[,]" *State v. Herbstman*, 1999-NMCA-014, ¶ 20, 126 N.M. 683, 974 P.2d 177, we believe that in setting forth the specific arrest procedures in Section 66-8-124, the Legislature intended to abrogate the common law right to citizens' arrests for suspected violations of motor vehicle laws. *See Bricker*, 2006-NMCA-052, ¶¶ 12, 14 (holding that Section 66-8-127 does not incorporate

9

the common law misdemeanor arrest rule for offenses governed by Section 66-8-123(A), which requires the arresting officer to issue a citation and release the person from custody, because such an interpretation of Section 66-8-127 would render the mandate of Section 66-8-123(A) meaningless). Therefore, Section 66-8-127 does not operate to allow citizens' arrests for violations of the Motor Vehicle Code and other laws relating to motor vehicles.

## E. BLAKE'S UNAUTHORIZED SEIZURE OF DEFENDANT DID NOT VIOLATE THE FOURTH AMENDMENT

**{28}** We next address whether Blake's seizure of Defendant was unreasonable under the Fourth Amendment of the United States Constitution solely because she acted without statutory authority to either detain or arrest him. The Court of Appeals recently addressed a similar issue in *Bricker* where the defendant, who was driving with a suspended license, was placed under custodial arrest and taken to the police station instead of being issued a citation and then released from custody, as required by statute. 2006-NMCA-052, ¶¶ 1, 2, 8. The Court concluded that "[t]he custodial arrest of Defendant violated Section 66-8-123(A) and was therefore unlawful. However, this holding alone does not resolve the question of whether the evidence obtained from the search of Defendant's wallet should have been suppressed." *Id.* ¶ 14. To answer that question "requires an analysis of whether the unlawful custodial arrest violated the Fourth Amendment to the United States Constitution or Article II, Section 10 of our State Constitution." *Id.*

**{29}** In *Bricker*, the State argued that "an arrest in violation of a statute does not elevate the issue to a constitutional level." *Id.* ¶ 19 (citing *People v. Lyon*, 577 N.W.2d 124, 129 (Mich. Ct. App. 1998) for the proposition that the exclusionary rule is only compelled by the Fourth Amendment if the seizure was constitutionally invalid, based on a lack of probable cause, and not merely statutorily illegal). The Court agreed, stating that "[w]ere we to be guided solely by federal law interpreting the Fourth Amendment, the custodial arrest of Defendant would be reasonable. Under the Fourth Amendment, the constitutional reasonableness of a custodial arrest is measured by whether probable cause existed for the arrest." *Id.* ¶ 21. The *Bricker* Court quoted *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) to set forth the principles of reasonableness under the Fourth Amendment:

> [T]he United States Supreme Court [has] held fast with probable cause as the test of reasonableness, "without the need to balance the interests and circumstances involved in particular situations. . . . If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."

*Bricker*, 2006-NMCA-052, ¶ 21. Notwithstanding its Fourth Amendment analysis, the Court of Appeals ultimately concluded that the defendant's custodial arrest violated Article II, Section 10 of the New Mexico Constitution and suppressed the evidence as unlawfully seized. *Id.* ¶ 30.

10

**{30}**     A few years after *Bricker* was filed, the United States Supreme Court ratified the Court of Appeals' decision. In a factual scenario essentially identical to the facts before the Court in *Bricker*, the United States Supreme Court relied in part on *Atwater* to hold that the defendant's custodial arrest, in violation of a Virginia statute that required him to have been issued a citation and then released, did not offend the Fourth Amendment because it was supported by probable cause. *Virginia v. Moore*, ___ U.S. ___, ___, 128 S. Ct. 1598, 1608 (2008). The United States Supreme Court stated that "[W]hether or not a search is reasonable within the meaning of the Fourth Amendment . . . has never depend[ed] on the law of the particular State in which the search occurs." *Id.* at ___, 128 S. Ct. at 1604 (internal quotation marks and citation omitted, alterations in original). This same principle is true in the context of seizures. *Id.* at ___, 128 S. Ct. at 1604-05. The Court concluded that "warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution, and that while States are free to regulate such arrests however they desire, state restrictions do not alter the Fourth Amendment's protections." *Id.* at ___, 128 S. Ct. at 1607. "When officers have probable cause to believe that a person has committed a crime in their presence, the Fourth Amendment permits them to make an arrest, and to search the suspect in order to safeguard evidence and ensure their own safety." *Id.* at ___, 128 S. Ct. at 1608.

**{31}**     The Supreme Court's decision in *Moore* rested on the premise that "[i]ncorporating state-law arrest limitations into the Constitution would produce a constitutional regime" that would "vary from place to place and from time to time[.]" *Id.* at ___, 128 S. Ct. at 1606, 1607 (internal quotation marks and citation omitted). This is because what would be permissible under the Fourth Amendment in one state might not be permissible in another. "Fourth Amendment protections are not so variable and cannot be made to turn upon such trivialities[,]" such as "local law enforcement practices[.]" *Id.* at ___, 128 S. Ct. at 1605 (internal quotation marks and citation omitted). Rather, the Fourth Amendment places "great weight" on the "essential interest in readily administrable rules." *Id.* at ___, 128 S. Ct. at 1606 (internal quotation marks and citation omitted). Simply put, "it is not the province of the Fourth Amendment to enforce state law." *Id.* at ___, 128 S. Ct. at 1608.

**{32}**     The glaring difference between the facts present in *Bricker* and *Moore* and those in Defendant's case is that here, Defendant was not detained by a commissioned officer. The issue before us is whether the Fourth Amendment would treat a violation of a state law restricting *who* may seize a person differently from a state law concerning *whether* a person may be taken into custodial arrest by an otherwise authorized officer. Given the broad language of the United States Supreme Court's recent decision in *Moore*, we do not believe that the Fourth Amendment would distinguish between state laws purporting to address a seizure's lawfulness. The only inquiry of consequence to the Fourth Amendment is whether the state actor has reasonable suspicion to detain or probable cause to arrest the defendant for a crime committed in his or her presence.

**{33}**     Our conclusion that the Fourth Amendment is not concerned with a state actor's violation of a statute governing who may seize a person suspected of committing a crime is

11

supported by analogous cases from other jurisdictions reaching the same conclusion. *See, e.g.*, *People v. Hamilton*, 666 P.2d 152, 156-57 (Colo. 1983) (en banc) (holding that an arrest supported by probable cause but made by officers acting in violation of a statute restricting their territorial jurisdiction did not violate the Fourth Amendment); *Moore v. State*, 798 S.W.2d 87, 89-90 (Ark. 1990) (finding that a citation issued by an officer who did not meet the statutory qualifications to serve as a police officer did not offend the Fourth Amendment), *overruled on other grounds by Grillot v. State*, 107 S.W.3d 136, 145 (Ark. 2003); *State v. Droste*, 697 N.E.2d 620, 622-23 (Ohio 1998) (holding that a DWI arrest made by liquor control investigators who did not have statutory authority to stop a driver for violating traffic laws was nonetheless constitutional under the Fourth Amendment because it was supported by probable cause). Therefore, we hold that an arrest made by a state actor in violation of a statute is not per se a violation of the Fourth Amendment. *See Droste*, 697 N.E.2d at 623 ("[A]bsent a violation of a constitutional right, the violation of a statute does not invoke the exclusionary rule."). The pertinent question is whether the state actor who seized the defendant had "probable cause to believe that a person has committed a crime in their presence[.]" *Moore*, ___ U.S. at ___, 128 S. Ct. at 1608.

**{34}** Defendant does not present any additional arguments that his seizure was unconstitutional under the Fourth Amendment. His sole argument on appeal to this Court is that his seizure was unconstitutional because Blake was without statutory authority to either detain or arrest him. Therefore, we do not address any other arguments relating to the lawfulness of his detention and subsequent arrest, such as whether his arrest was supported by probable cause. We hold that Blake's lack of statutory authority to seize Defendant did not violate Defendant's Fourth Amendment protections against unreasonable seizures.

## F. DEFENDANT'S CONSENT TO THE BLOOD TEST WAS VALID

**{35}** Defendant argues that the results of his blood test should be suppressed because the test was taken without his voluntary consent. He admits that he ultimately consented to the blood draw. However, he argues that his consent was not valid because it was the product of duress and coercion. We disagree.

**{36}** The record shows that once Defendant was arrested at the hospital, he was asked "more than twice" if he would consent to a blood draw and that he refused these "numerous" requests. However, after Defendant had been evaluated and scheduled for release from the emergency room, the arresting officer gave him a "last chance" to consent to the blood draw. The officer explained to him that if he did not consent to the blood draw, he would be charged with aggravated DWI and, if he were to be convicted, the consequences of that conviction. Defendant then consented to have his blood drawn.

**{37}** The Court of Appeals affirmed the district court's denial of Defendant's motion to suppress the results of his blood draw. *Slayton*, No. 27,892, slip op. at 12-13. The Court of Appeals concluded that "Defendant only had the right 'not to be forcibly tested after

12

manifesting refusal.'" *Id.* at 12 (quoting *McKay v. Davis*, 99 N.M. 29, 30, 653 P.2d 860, 861 (1982). We agree.

> Any person who operates a motor vehicle within this state shall be deemed to have given consent, subject to the provisions of the Implied Consent Act [66-8-105 NMSA 1978], to chemical tests of his breath or blood or both . . . for the purpose of determining the drug or alcohol content of his blood if arrested for any offense arising out of the acts alleged to have been committed while the person was driving a motor vehicle while under the influence of an intoxicating liquor or drug.

NMSA 1978, § 66-8-107(A) (1978, as amended through 2003). The Implied Consent Act also provides that if a person refuses to submit to a breath or blood test, "none shall be administered except when a municipal judge, magistrate or district judge issues a search warrant authorizing chemical tests as provided in Section 66-8-107 NMSA 1978[.]" NMSA 1978, § 66-8-111(A) (1978, as amended through 2005). This right, however, is a only a right "not to be forcibly tested after manifesting refusal." *McKay,* 99 N.M. at 30, 653 P.2d at 861.

**{38}** Defendant does not argue that he was forcibly tested. Rather, he argues that his consent was coerced by the arresting officer's explanation that if he did not consent, he would be charged with aggravated DWI. As explained previously, Defendant's implied consent to the blood draw was given when he got behind the wheel and took to the road. As a result, any coercion affecting his consent would be to his willingness to drive the vehicle, not to submit to the blood test. Therefore, because Defendant was neither forcibly tested nor coerced to drive his vehicle, he consented pursuant to the Implied Consent Act, regardless of the officer's representations of the consequences of his failure to submit.

## III.     CONCLUSION

**{39}** Although Blake did not have statutory authority to detain or arrest Defendant for suspected DWI, her lack of authority did not by itself amount to a violation of the Fourth Amendment's protections against unreasonable seizure. Defendant's consent to have his blood drawn was valid. Therefore, we affirm his conviction.

**{40}     IT IS SO ORDERED.**

_____
**EDWARD L. CHÁVEZ, Chief Justice**

**WE CONCUR:**

_____
**PATRICIO M. SERNA, Justice**

13

**PETRA JIMENEZ MAES, Justice**

**RICHARD C. BOSSON, Justice**

**CHARLES W. DANIELS, Justice**

**Topic Index for *State v. Michael Slayton*, No. 31,244**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-PA | Preservation of Issues for Appeal |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-FA | Fourth Amendment |
| CT-SU | Suppression of Evidence |
| **CL** | **CRIMINAL LAW** |
| CL-DG | Driving While Intoxicated |
| CL-MH | Motor Vehicle Violations |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-AT | Arrest |
| CA-CZ | Citizen's Arrest |
| CA-DN | Detention or Custody |
| CA-IC | Implied Consent |
| CA-MR | Motion to Suppress |
| CA-PO | Peace Officer |
| CA-PA | Probable Cause |
| CA-SZ | Search and Seizure |
| CA-WA | Warrantless Arrest |
| **EV** | **EVIDENCE** |
| EV-BT | Blood/Breath Tests |
| EV-SU | Suppression of Evidence |
| **GV** | **GOVERNMENT** |

GV-PE                   Public Employees