# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number:  2019-NMCA-026**

**Filing Date:  February 14, 2019**

**No. A-1-CA-35497**

**STATE OF NEW MEXICO,**

   Plaintiff-Appellant,

v.

**SOMER D. WRIGHT,**

   Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF TORRANCE COUNTY**
**Matthew G. Reynolds, District Judge**

Certiorari Granted, April 19, 2019, No. S-1-SC-37589

Hector H. Balderas, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Assistant Attorney General
Albuquerque, NM

for Appellant

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellee

## OPINION

**KIEHNE, Judge Pro Tempore.**

**{1}**   A reserve deputy sheriff's officer followed Defendant Somer Wright home after seeing her truck driving erratically on the highway. When Defendant arrived home, her truck struck a parked vehicle in the driveway, and then backed up, almost hitting the reserve deputy's vehicle. The reserve deputy approached Defendant's truck and, after she admitted to having drunk four beers, advised her to "hang tight." Defendant sat in her truck until a regular commissioned deputy sheriff arrived four to five minutes later to

continue the investigation. Defendant was ultimately charged with driving while intoxicated (DWI).

**{2}** It is undisputed that the reserve deputy lacked statutory authority under the Motor Vehicle Code to require Defendant to remain in her truck until the commissioned deputy arrived on the scene. It is also undisputed that the reserve deputy's action constituted an arrest under New Mexico law, albeit one that did not violate the Fourth Amendment. The question we must decide is whether the arrest was constitutionally unreasonable under Article II, Section 10 of the New Mexico Constitution. The district court found that the reserve deputy's action was unconstitutional, and suppressed all evidence obtained by law enforcement after the reserve deputy directed Defendant to "hang tight." The State now appeals.

**{3}** We conclude that the arrest was constitutionally reasonable, because the State's strong interest in apprehending and prosecuting drunk drivers outweighed the minor intrusion on Defendant's privacy rights. We therefore reverse the district court's suppression order.

## BACKGROUND

**{4}** On the evening of March 15, 2014, Torrance County Reserve Deputy Roy Thompson was on duty in a marked patrol car belonging to the Torrance County Sheriff's Department. He wore a uniform and badge that identified him as a deputy and were largely indistinguishable from those of a full-time regular deputy. Thompson was traveling down Highway 41 when he was approached from behind by two vehicles. Believing they were exceeding the 55 mile-per-hour posted speed limit, Thompson pulled off the highway to let those vehicles pass. The headlights on one of the vehicles kept moving "back and forth," and as Thompson pulled over, one of the vehicles, a white Dodge truck driven by Defendant, crossed the outer white line and nearly struck Thompson's vehicle. Thompson's radar showed that Defendant's truck was traveling at sixty-eight miles per hour, and Thompson sped up to around eighty miles per hour and passed another vehicle to catch up with Defendant. While traveling behind Defendant, Thompson used his personal cell phone to contact Deputy Ron Fulfer, the only full-time deputy on duty in Torrance County that evening, who instructed Thompson to follow the truck and initiate a stop only if necessary to do so for safety reasons. Thompson also ran the truck's license plate number and obtained Defendant's address. Thompson followed the truck to a private residence matching the vehicle's registered address. When Defendant pulled the truck into her driveway, she struck another vehicle that was already parked there. Defendant backed up after hitting the parked car, and according to Thompson, nearly struck his patrol car[1] as he pulled up behind Defendant's truck and parked on the highway. Though he never activated his emergency lights, Thompson did shine the patrol car's spotlight on the now-stationary truck before approaching Defendant on foot. Defendant remained in the driver's seat of the truck, with the engine running and the lights on.

---

[1]Thompson testified that he did not believe Defendant was attempting or intended to flee.

**{5}** Thompson identified himself as a reserve deputy, and pointed out to Defendant that she had hit the vehicle in the driveway and nearly hit his patrol car, to which Defendant responded by stating, in substance, that the car in her driveway was hers, and she could hit it if she wanted to. At that point, Thompson smelled the odor of alcohol and asked if Defendant had been drinking. She acknowledged that she had consumed "four green beers," apparently in celebration of the then upcoming St. Patrick's Day holiday. Thompson instructed Defendant to "hang tight" until Deputy Fulfer arrived. Thompson then returned to and sat in his patrol car. Defendant followed Thompson's direction by remaining in her vehicle, and approximately four to five minutes later, Deputy Fulfer arrived, conducted a DWI investigation, and arrested Defendant for DWI. Defendant was ultimately charged with aggravated DWI, contrary to NMSA 1978, § 66-8-102(A), (D)(1) (2010, amended 2016), which carries a penalty of up to ninety days' imprisonment and a fine of not more than $500. *See* § 66-8-102(E).

**{6}** Defendant moved to suppress the evidence obtained after Deputy Fulfer arrived on the scene, arguing that it was obtained as a result of an unlawful seizure in violation of Article II, Section 10 of the New Mexico Constitution. The district court granted Defendant's suppression motion following a hearing, concluding that (1) Thompson's "temporary detention" of Defendant constituted an "arrest" within the meaning of NMSA 1978, § 66-8-124(A) (2007) (providing that "[n]o person shall be arrested for violating the Motor Vehicle Code . . . or other law relating to motor vehicles punishable as a misdemeanor except by a commissioned, salaried peace officer who, at the time of arrest, is wearing a uniform clearly indicating the peace officer's official status"); (2) Defendant's arrest was not authorized by Section 66-8-124(A) because Thompson was not a commissioned, salaried deputy; and (3) Defendant's arrest, while not violating the Fourth Amendment, did violate Article II, Section 10 of the New Mexico Constitution. The State now appeals.

## DISCUSSION

**{7}** "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Paananen*, 2015-NMSC-031, ¶ 10, 357 P.3d 958 (internal quotation marks and citation omitted). "We review the [district] court's ruling on a defendant's motion to suppress to determine whether the law was correctly applied to the facts, viewing them in the manner most favorable to the prevailing party." *State v. Ortiz*, 2017-NMCA-062, ¶ 9, 400 P.3d 312 (alteration, internal quotation marks, and citation omitted), *cert. denied*, 2017-NMCERT-___ (No. S-1-SC-36492, June 22, 2017). "While we afford de novo review of the [district] court's legal conclusions, we will not disturb the [district] court's factual findings if they are supported by substantial evidence." *Id.* (internal quotation marks and citation omitted).

**{8}** We begin our analysis by setting out several undisputed legal and constitutional precepts that would normally serve as building blocks of an analysis under Article II, Section 10. First, the State concedes that Thompson's actions in temporarily detaining Defendant amounted to an "arrest" as that term is used in Section 66-8-124(A). *See State v. Slayton*, 2009-NMSC-054, ¶ 20, 147 N.M. 340, 223 P.3d 337 (concluding that

"temporary detentions are covered under the term 'arrest' as used in Chapter 66 as well as custodial arrests"); *State v. Bricker*, 2006-NMCA-052, ¶ 9, 139 N.M. 513, 134 P.3d 800 (same). The State also agrees, as it must, that Thompson was not a commissioned, salaried peace officer under Section 66-8-124(A) and therefore acted without statutory authority when he temporarily detained Defendant. Neither party disputes that Thompson's temporary detention of Defendant, although statutorily unauthorized, did not violate the Fourth Amendment. *See Slayton*, 2009-NMSC-054, ¶¶ 30-33 (holding that the defendant's statutorily unauthorized detention by a police service aide did not violate the Fourth Amendment). Finally, there is no dispute that Thompson was acting in his capacity as a reserve deputy on behalf of Torrance County when he began following Defendant's vehicle and that his temporary detention of Defendant therefore amounted to a seizure by a state actor. *See id.* ¶¶ 21-27. Given the parties' consensus on these matters, the sole issue before us is whether Thompson's actions violated Article II, Section 10 of the New Mexico Constitution, which guarantees the right to be free "from unreasonable searches and seizures."

{9}     Our Supreme Court has often interpreted Article II, Section 10 to provide significantly greater protections than those afforded under the Fourth Amendment. *See, e.g.*, *State v. Cardenas-Alvarez*, 2001-NMSC-017, ¶¶ 2, 5, 130 N.M. 386, 25 P.3d 225 (holding that extended detention of a defendant at border checkpoint was unlawful under Article II, Section 10); *State v. Gomez*, 1997-NMSC-006, ¶¶ 39, 44, 122 N.M. 777, 932 P.2d 1 (rejecting federal automobile exception to warrant requirement in favor of greater protections under Article II, Section 10); *State v. Attaway*, 1994-NMSC-011, ¶¶ 22, 25, 117 N.M. 141, 870 P.2d 103 (holding that Article II, Section 10 requires officer executing search warrant to "knock and announce"); *Campos v. State*, 1994-NMSC-012, ¶¶ 10, 14, 117 N.M. 155, 870 P.2d 117 (requiring warrantless arrest to be based on both probable cause and sufficient exigent circumstances). New Mexico courts have specifically applied this greater constitutional protection to motorists. *See Cardenas-Alvarez*, 2001-NMSC-017, ¶ 15 (stating that "[t]he extra layer of protection from unreasonable searches and seizures involving automobiles is a distinct characteristic of New Mexico constitutional law[,]" and observing that the New Mexico Supreme Court has "dismissed the notion that an individual lowers his expectation of privacy when he enters an automobile[.]").

{10}    When conducting an analysis under Article II, Section 10, we initially consider "whether the right being asserted is protected under the federal Constitution." *Cardenas-Alvarez*, 2001-NMSC-017, ¶ 6. We agree with the district court and the parties that Thompson's statutorily unauthorized, temporary detention of Defendant did not violate the Fourth Amendment. Our Supreme Court previously addressed the Fourth Amendment's application to a seizure made by a non-commissioned police service aide in violation of Section 66-8-124(A), the same statute at issue here, in *Slayton*, 2009-NMSC-054, and concluded that the service aide's lack of statutory authority to arrest the defendant did not by itself amount to a Fourth Amendment violation. *Id.* ¶ 33 (stating that "the Fourth Amendment is not concerned with a state actor's violation of a statute governing who may seize a person suspected of committing a crime[.]"). The *Slayton* Court, however, did not have occasion to consider whether the New Mexico Constitution

would have prohibited the seizure. This case requires us to consider the question that *Slayton* left unanswered—does the seizure of a defendant by a government actor lacking statutory authority to act violate Article II, Section 10, thus requiring suppression of the evidence gathered as a result of the seizure?

**{11}**    When considering an Article II, Section 10 claim, "New Mexico courts have consistently rejected federal bright-line rules in favor of an examination into the reasonableness of officers' actions under the circumstances of each case." *State v. Ochoa*, 2009-NMCA-002, ¶ 24, 146 N.M. 32, 206 P.3d 143; *see State v. Granville*, 2006-NMCA-098, ¶ 18, 140 N.M. 345, 142 P.3d 933 (stating that "[i]n all cases that invoke Article II, Section 10, the ultimate question is reasonableness"). "The Constitution only proscribes . . . those searches and seizures which are unreasonable." *State v. Werner*, 1994-NMSC-025, ¶ 11, 117 N.M. 315, 871 P.2d 971. Evidence seized in violation of Article II, Section 10 must be suppressed. *See State v. Gutierrez*, 1993-NMSC-062, ¶ 45, 116 N.M. 431, 863 P.2d 1052 ("[T]he New Mexico constitutional prohibition against unreasonable searches and seizures requires that we deny the state the use of evidence obtained in violation of Article II, Section 10 in a criminal proceeding."). Analysis of constitutional reasonableness in this case is guided largely by this Court's previous decisions in *State v. Rodarte*, 2005-NMCA-141, 138 N.M. 668, 125 P.3d 647, and *State v. Bricker*, 2006-NMCA-052. In *Rodarte*, we addressed whether the New Mexico Constitution allows "an officer [to] arrest an individual solely on the basis of probable cause that a minor criminal offense for which jail time is not authorized has been committed." 2005-NMCA-141, ¶ 1. In that case, a police officer subjected the defendant to a full custodial arrest for being a minor in possession of alcohol, a misdemeanor offense which carried with it no jail time. *Id.* ¶¶ 3-4. Four years earlier, in *Atwater v. City of Lago Vista*, 532 U.S. 318, 323 (2001), a narrow majority of the Supreme Court of the United States adopted a bright-line rule that an arrest based solely on probable cause for a minor offense for which jail time was not authorized (in that case, a seatbelt violation) was reasonable under the Fourth Amendment. In a forceful dissent, Justice O'Connor took the view that reasonableness under the Fourth Amendment should be determined by balancing "the degree to which [the arrest] intrudes upon an individual's privacy" and "the degree to which [the arrest] is needed for the promotion of legitimate governmental interests." *Id.* at 361 (quoting *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999)). Justice O'Connor stated that "the penalty that may attach to any particular offense seems to provide the clearest and most consistent indication of the [s]tate's interest in arresting individuals suspected of committing that offense." *Id.* at 365 (quoting *Welsh v. Wisconsin*, 466 U.S. 740, 754 n.14 (1984)). Thus, under this calculus, probable cause alone does not make an arrest reasonable where an offense is not punishable with jail time; rather, there must be " 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the additional] intrusion' of a full custodial arrest." *Id.* at 366 (alteration in original) (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). In *Rodarte*, this Court adopted Justice O'Connor's approach as being more consistent with New Mexico's jurisprudence under Article II, Section 10, which has stressed the importance of case-by-case determinations of reasonableness and avoided bright-line rules. 2005-NMCA-141, ¶¶ 13-16.

**{12}** The next year, in *Bricker*, 2006-NMCA-052, we addressed the constitutional reasonableness of a full custodial arrest of a defendant suspected of driving with a suspended license, a misdemeanor punishable by a jail term of up to 364 days under NMSA 1978, Section 66-5-39(A) (2013). Because the governing Motor Vehicle Code provisions, Sections 66-8-122(G) and 66-8-123(A), required the issuance of a citation and the release of an offending motorist in lieu of a custodial arrest unless the underlying license suspension resulted from the violation of certain DWI-related laws, and the state presented no evidence about the reason for the defendant's license suspension, this Court therefore concluded that the defendant's custodial arrest violated the statute and was unlawful. *Id.* ¶ 14. To determine whether evidence obtained as a result of the statutorily unauthorized arrest should be suppressed, we considered whether the arrest violated Article II, Section 10 and applied the balancing-of-interests test that we adopted in *Rodarte*. *Bricker*, 2006-NMCA-052, ¶¶ 14, 23, 26. This Court pointed to the statute's requirement that offenders be cited and released as evincing the Legislature's intent "to protect individual liberty over perceived governmental need," an intent which we characterized as having "constitutional bearing." *Id.* ¶ 29. This Court also noted that the possibility of jail time faced by one convicted of driving with a suspended license did not alter the analysis, explaining that "[j]ailability cannot justify overlooking an unlawful custodial arrest and permitting searches based on the unlawful arrest" because the "intrusion upon one's liberty is no less significant in cases in which the offense is jailable than in cases in which the offense is non-jailable." *Id.* ¶ 27. In all, we concluded in *Bricker* that the defendant's custodial arrest, made without statutory authority, failed the test of constitutional reasonableness under Article II, Section 10. *Bricker*, 2006-NMCA-052, ¶ 20.

**{13}** In assessing the constitutional reasonableness of Thompson's detention of Defendant in this case, we must apply the balancing-of-interests test that we employed in *Rodarte* and *Bricker*, which, as indicated, requires us to evaluate, "on the one hand, the degree to which [the seizure] intrude[d] upon [Defendant]'s privacy and, on the other, the degree to which [the seizure was] needed for the promotion of legitimate governmental interests." *Atwater*, 532 U.S. at 361 (O'Connor, J., dissenting) (internal quotation marks and citation omitted). Applying this balancing test to the facts of this case, we hold that Thompson's temporary detention of Defendant was constitutionally reasonable. Under the totality of the circumstances, the intrusion on Defendant's privacy was minimal. After all, despite observing Defendant's speeding and erratic driving on a public highway, Thompson did not attempt to pull her over or activate the emergency lights on his patrol car. Instead, he followed Defendant to her home and, once there, shone a spotlight on her truck and approached it by foot. Upon making contact with Defendant, he spoke to her briefly, instructed her to remain where she was, and returned to his patrol car, where he waited for Deputy Fulfer's arrival. Defendant remained in the driver's seat of her truck, with the engine running, for about four or five minutes until Deputy Fulfer arrived to take charge of the investigation. *See generally State v. Nance*, 2011-NMCA-048, ¶ 26, 149 N.M. 644, 253 P.3d 934 (stating that police intrusion into the defendant's privacy was "de minimis" and a "slight intrusion" where they asked him to stand outside his home for fifteen minutes during a DWI investigation). Thompson did not ask to see Defendant's driver's license, registration, or

insurance information; he did not instruct Defendant to step out of her truck or wait in his patrol car; he did not brandish a weapon; and he did not place Defendant in handcuffs or otherwise physically restrain her freedom of movement. He simply told Defendant to "hang tight" until Deputy Fulfer arrived.

**{14}** By contrast, under the circumstances of this case, the State's need to temporarily detain Defendant far outweighed whatever brief, minimal privacy intrusion that Defendant may have experienced. It is well recognized that the State's interest in removing drunk drivers from its roadways is compelling. *See State v. Johnson*, 2001-NMSC-001, ¶ 17, 130 N.M. 6, 15 P.3d 1233 (noting that "the public interest and potential harm posed by intoxicated drivers is so compelling that the offense of DWI is a strict liability crime") (citation omitted); *Nance*, 2011-NMCA-048, ¶ 26 (concluding that the state's interests outweighed the defendant's in part because of a "compelling public interest in eradicating DWI occurrences and their potentially deadly consequences" (alteration, internal quotation marks, and citation omitted)). DWI is a more serious offense than being a minor in possession of alcohol, the offense involved in *Rodarte*, or driving with a suspended license, the offense at issue in *Bricker*. It also bears emphasis that by the time Thompson detained Defendant, he had seen her drive over the speed limit, weave back and forth on the highway, collide with a parked vehicle and nearly hit his patrol car, and had heard her admit to consuming four beers. *See City of Santa Fe v. Martinez*, 2010-NMSC-033, ¶ 16, 148 N.M. 708, 242 P.3d 275 ("[T]he warrantless arrest of one suspected of committing DWI is valid when supported by both probable cause and exigent circumstances."). Exigent circumstances also weighed in favor of a temporary detention, because otherwise Defendant might have entered her house and refused to come back outside once Deputy Fulfer arrived, thereby delaying and complicating the DWI investigation by requiring Deputy Fulfer to seek an arrest warrant in order to enter Defendant's home. *See Nance*, 2011-NMCA-048, ¶ 23 (rejecting conclusion that dissipation of alcohol alone is exigency enough to justify warrantless entry into the home). Alternatively, Defendant might have tried to drive away, a circumstance which could have posed a serious danger to the public.

**{15}** Defendant offers several reasons to uphold the district court's suppression order, but none of them are persuasive. First, she argues that near-controlling weight should be given to Thompson's violation of Section 66-8-124(A), which, as she puts it, limits the authority to arrest "to those possessing appropriate law enforcement authority, training, and experience thereby protecting the same privacy and liberty interests protected by Article II, Section 10." While in no way condoning Thompson's violation of the statute, we decline Defendant's invitation to treat that violation as dispositive of our constitutional analysis, an approach which would be contrary to our Supreme Court's aversion to bright-line rules when applying Article II, Section 10, and its direction that courts employ a case-by-case approach in determining reasonableness. Moreover, unlike the statute at issue in *Bricker*, which embodied the Legislature's intent that no one should be subjected to a full custodial arrest for driving on a suspended license (provided that the suspension was unrelated to a violation of the DWI laws), Section 66-8-124(A), the statute at issue here, does not reflect a similar legislative policy. Rather, Section 66-8-124(A) merely limits the class of persons who may subject a motorist to a

temporary detention or arrest. It says nothing about, and does not detract from, the seriousness of DWI or the State's compelling interest in apprehending drunk drivers.

**{16}** Second, pointing to Thompson's relative lack of training and experience, Defendant contends that upholding the temporary detention here would "encourage[ ] abuse and arbitrary governmental intrusion." Significantly, however, Defendant does not argue, much less show, that Thompson's relative lack of experience and training harmed her in any way, and therefore suppression is not justified on the basis of this undeveloped "lack of training" argument. *See State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (reiterating that appellate courts do not review unclear or undeveloped arguments). This is not to suggest that we are unsympathetic to Defendant's stated concerns, and we take this opportunity to warn law enforcement agencies that this opinion does not give them carte blanche to allow reserve deputies to detain motorists. Under New Mexico's case-by-case approach in reviewing claimed violations of Article II, Section 10, it is easy to envision a case involving a greater intrusion on a motorist's privacy than occurred here, or a less compelling state interest than existed here, either of which might be sufficient to justify suppression. A county sheriff's conduct in encouraging or turning a blind eye to a reserve deputy's violation of Section 66-8-124(A) jeopardizes the legitimate enforcement of the Motor Vehicle Code.

**{17}** Third, Defendant argues that Thompson's actions in speeding to catch up with her truck, in closely following her, and in directing her to remain in her vehicle were "entirely unnecessary," concluding that the resulting detention did not promote any legitimate governmental interests. Defendant also argues that any police concern that she might try to enter her home, thus making the investigation more difficult, was speculative; that requiring her to remain in her truck achieved only a "minor convenience" for the police; and that the State's interests could have been satisfied by a simple police request that Defendant consent to stay outside until Deputy Fulfer arrived. We disagree with these arguments. As Thompson explained, he sped up to follow Defendant to help ensure that she would not endanger other motorists, including those who might be traveling in the opposite direction (fortuitously, there were none). And allowing Defendant to enter her home in these circumstances would likely have impeded the police investigation.

**{18}** Finally, Defendant argues that Thompson had violated Section 66-8-124(A) on previous occasions, demonstrating that his present "violation of the statute was not accidental or unknowing[,]" and therefore should not be considered de minimis. While defense counsel questioned Thompson about other cases in which he had been involved, this inquiry did not elicit any admissions, and defense counsel did not introduce any evidence into the record about the facts and circumstances of any other cases. We therefore do not consider this argument. *See Proper v. Mowry*, 1977-NMCA-080, ¶ 37, 90 N.M. 710, 568 P.2d 236 ("Remarks, arguments and statements of lawyers are not evidence." (internal quotation marks and citation omitted)); *State v. Romero*, 1975-NMCA-017, ¶ 2, 87 N.M. 279, 532 P.2d 208 ("Matters outside the record present no issue for review.").

**CONCLUSION**

**{19}** We reverse the district court's suppression order and remand this case for further proceedings consistent with this opinion.

**{20} IT IS SO ORDERED.**

**EMIL J. KIEHNE, Judge Pro Tempore**

**I CONCUR:**

**HENRY M. BOHNHOFF, Judge Pro Tempore**

**JULIE J. VARGAS, Judge (dissenting).**

**VARGAS, Judge (dissenting).**

**{21}** The State unquestionably has a compelling interest in deterring drunk driving and maintaining highway safety. *Cf. Nance*, 2011-NMCA-048, ¶ 26 (concluding the state's interests outweighed the defendant's in part because of a "compelling public interest in eradicating DWI occurrences and their potentially deadly consequences" (internal quotation marks and citation omitted)). I do not, however, believe that our jurisprudence supports the majority's conclusion that the exigent circumstances of this case allowed for the warrantless, unauthorized arrest of Defendant. *Cf. id.* ¶ 23 (rejecting conclusion that dissipation of alcohol alone is exigency enough to justify warrantless entry into the home); *see* Majority Op. ¶ 14. Instead, I agree with the district court that, on balance, Thompson's actions were constitutionally unreasonable under Article II, Section 10 of the New Mexico Constitution, and the evidence obtained after Deputy Fulfer arrived on the scene should be suppressed.

**{22}** The majority's efforts to balance the State's interests with Defendant's interests analyzes Defendant's interests too narrowly, and in doing so, omits important considerations that, though more conceptually than directly related to Defendant, are still highly relevant to a reasonableness analysis.

**{23}** While the majority describes the intrusion on Defendant's privacy as "minimal," the detention interfered with Defendant's ability to enter her own home after parking in her own driveway. The home is undeniably afforded the highest level of protection by Article II, Section 10. *State v. Nyce*, 2006-NMSC-026, ¶ 12, 139 N.M. 647, 137 P.3d 587. While I recognize that this case does not implicate a search or seizure taking place *inside* the home, it seems relevant—indeed, compelling—that the intrusion impeded Defendant's ability to enter her home and move freely within her property. This limitation, however, is given little consideration by the majority.

**{24}** Further, and perhaps more importantly, the majority fails to consider the broader public interest in requiring that police and their volunteer officers comply with our

statutory laws. *Cf. State v. Jones*, 1998-NMCA-076, ¶ 15, 125 N.M. 556, 964 P.2d 117 (acknowledging public interest in law enforcement compliance with DWI notice laws was strong enough to warrant reaching potentially moot issue on appeal). As a member of the public, Defendant shares this interest. And, it is this interest that I conclude ultimately tips the balance in Defendant's favor. In reaching this conclusion, I note that we are tasked, not only with settling the dispute before us, but also with the responsibility of shaping the parameters of police conduct and establishing standards to measure and inform law enforcement practices. *See State v. Ryon*, 2005-NMSC-005, ¶ 11, 137 N.M. 174, 108 P.3d 1032 ("Although our inquiry is necessarily fact-based[,] it compels a careful balancing of constitutional values, which extends beyond fact-finding to shape the parameters of police conduct by placing the constitutional requirement of reasonableness in factual context[.]" (internal quotation marks, and citation omitted)); *Attaway*, 1994-NMSC-011, ¶ 9-10 (acknowledging that search and seizure jurisprudence reflects appellate efforts to "establish objective standards to measure and inform law enforcement practices").

**{25}** The Legislature's intention that individuals be free from arrest by untrained citizens is clear from the plain language of Section 66-8-124(A), authorizing only commissioned, salaried peace officers to arrest. *See Slayton*, 2009-NMSC-054, ¶ 27 ("[I]n setting forth the specific arrest procedures in Section 66-8-124, the Legislature intended to abrogate the common law right to citizens' arrests for suspected violations of motor vehicle laws."). Thompson's testimony made clear that he was aware he lacked statutory authority to stop Defendant. He nonetheless found it appropriate to reach speeds well in excess of the posted speed limit in order to follow Defendant home, shine a spotlight into Defendant's property, light up her parked car, and prevent her from entering her home. Thompson's disregard for the statutory limitations to his authority is particularly troubling in light of suggestions throughout the record and briefing that this is not the first occasion on which Thompson has disregarded the limitations of his position. Indeed, at the suppression hearing, Thompson admitted that on one occasion, he engaged his emergency lights and pulled over a defendant, though, when asked by defense counsel, he didn't recall the stop having been held to be illegal. Thompson also admitted to having detained another defendant, but when asked by defense counsel whether the evidence was suppressed and the case dismissed because of his "illegal detention," he responded only that he remembered "some part of the evidence was suppressed." The majority declined to consider these cases, concluding that defense counsel's questions "did not elicit any admissions[.]" Majority Op. ¶ 18. While the majority is correct that Thompson avoided admitting that the evidence in those cases was suppressed as a result of his wrongful conduct, in both of the cases he admitted to having detained the defendants, conduct for which he had no authority. Defendant's and the public's interest in ensuring that the police and their volunteer officers comply with our statutory laws should be considered when determining whether Thompson's actions were constitutionally reasonable under Article II, Section 10.

**{26}** Further, I am not persuaded by the majority's argument that exigent circumstances weighed in favor of Thompson's temporary, though unlawful detention of

Defendant. Majority Op. ¶ 14. The majority reasons that had Thompson not detained her, the investigation may have been more difficult because Deputy Fulfer would have had to seek an arrest warrant to enter her home, thereby allowing the alcohol in her system to dissipate. *Id.* Alternatively, the majority reasons, Defendant may have driven away. *Id.* The record is devoid of any evidence that Defendant planned to drive away, and the majority concedes, "Thompson testified that he did not believe Defendant was attempting or intending to flee." *Id.* ¶ 4 n.1. Further, dissipation of alcohol is but one consideration in the reasonableness analysis, *see Nance*, 2011-NMCA-048, ¶ 23, and when considered in light of Defendant's interest in entering her own home and moving freely within her property and the added interest of requiring the police and its volunteer officers to comply with our statutory law, I believe it is insufficient to render Thompson's actions reasonable. Thompson should have waited for Officer Fulfur, who, if necessary, could have obtained a warrant. I believe that the balance of factors weighs in favor of affirming the district court's determination that Thompson's arrest of Defendant, which itself was a violation of Section 66-8-124(A), was unreasonable under Article II, Section 10 and required the suppression of the evidence obtained after Officer Fulfur arrived. Absent suppression, I have little confidence that Thompson's unlawful actions will be deterred. *See State v. Santiago*, 2009-NMSC-045, ¶ 5, 147 N.M. 76, 217 P.3d 89 (holding that courts suppress evidence obtained as fruit of an unconstitutional search or seizure to redress and deter violations of the Fourth Amendment). I would affirm the district court's order granting the motion to suppress.

**JULIE J. VARGAS, Judge**