Certiorari Denied, May 19, 2011, No. 32,864

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2011-NMCA-064

Filing Date:    January 19, 2011

Docket No. 29,884

STATE OF NEW MEXICO,

    Plaintiff-Appellant,

v.

DAVID MAES,

    Defendant-Appellee.

APPEAL FROM THE DISTRICT COURT OF RIO ARRIBA COUNTY
Sheri A. Raphaelson, District Judge

Gary K. King, Attorney General
Santa Fe, NM
M. Anne Kelly, Assistant Attorney General
Albuquerque, NM

for Appellant

Law Offices of Nancy L. Simmons, P.C.
Nancy L. Simmons
Albuquerque, NM

for Appellee

OPINION

CASTILLO, Judge.

{1}     This case requires us to determine whether a Basic Duty Uniform (BDU) constitutes a "uniform" as that term is used in NMSA 1978, Section 66-8-124(A) (2007), and NMSA 1978, Section 66-8-125(C) (1978), both of which require officers to be in "uniform" when carrying out an arrest for traffic and motor vehicle code violations.  We conclude that a BDU

1

is a uniform and reverse.

## I.    BACKGROUND

{2}    In December of 2008, Defendant was charged with and indicted on one count of possession with intent to distribute an imitation controlled substance in violation of NMSA 1978, Section 30-31A-6 (1983), and one count of possession of drug paraphernalia in violation of NMSA 1978, Section 30-31-25.1 (2001). The events leading to these charges occurred in October of 2007 in the Chimayo area of New Mexico. The following facts are not disputed.

{3}    Two State police officers wearing BDUs and driving an unmarked vehicle were engaged in a law enforcement operation in the Chimayo area when they witnessed a driver commit traffic infractions and decided to conduct a traffic stop. Defendant was the owner and operator of that vehicle. After performing a license plate check, the officers learned that Defendant had outstanding warrants and arrested him. The officers performed a search incident to arrest and discovered imitation controlled substances and drug paraphernalia.

{4}    Defendant filed a pretrial motion to suppress all of the evidence underlying the charges. In that motion, Defendant cited Sections 66-8-124(A) and -125(C) and argued that these statutes require law enforcement officers to be in uniform when they make traffic stops and arrests. Defendant asserted that the officers violated these statutes, claimed that the officers were not in uniform when they stopped and arrested him, and argued that suppression was required. Alternatively, Defendant argued that the arrest was the result of a pretextual stop and that the evidence should be suppressed for this independent reason. The State responded that the statutes Defendant cited were inapplicable and countered that the stop was not pretextual.

{5}    In its order on Defendant's motion, the district court concluded that Sections 66-8-124(A) and -125(C) were applicable and that these statutes required the officers be in uniform at the time they conducted the traffic stop and arrested Defendant. The district court then concluded that the BDUs the officers were wearing at that time did not constitute uniforms as contemplated by the statutes and granted the motion to suppress. The district court did not address Defendant's pretext argument. The State appeals.

## II.    DISCUSSION

{6}    This matter comes to us from the district court's ruling on the Defendant's motion to suppress. Our standard of review in that context is well settled—a trial court's ruling on a motion to suppress presents us with a mixed question of fact and law whereby "[t]his Court reviews factual findings under a substantial evidence standard, viewing the facts in the light most favorable to the prevailing party, and we review de novo whether the district court correctly applied the law to the facts." *State v. Slayton*, 2009-NMSC-054, ¶ 11, 147 N.M. 340, 223 P.3d 337. In this case, the district court's decision to grant Defendant's motion was

based on its interpretation of Sections 66-8-124(A) and -125(C). "Statutory interpretation is a question of law, which this Court reviews de novo." *State v. Torres*, 2006-NMCA-106, ¶ 5, 140 N.M. 230, 141 P.3d 1284 (internal quotation marks and citation omitted). "The fundamental rule in construing statutes is to ascertain and give effect to the intention of the [L]egislature." *State v. Archuleta*, 118 N.M. 160, 162, 879 P.2d 792, 794 (Ct. App. 1994) (internal quotation marks and citation omitted).

**{7}**     Section 66-8-124(A) provides that "[n]o person shall be arrested for violating the Motor Vehicle Code . . . or other law relating to motor vehicles punishable as a misdemeanor except by a commissioned, salaried peace officer who, at the time of arrest, is wearing a uniform clearly indicating the peace officer's official status." The portions of Section 66-8-125(C) pertinent here provide that "[m]embers of the New Mexico state police, sheriffs, and their salaried deputies and members of any municipal police force may not make arrest for traffic violations if not in uniform[.]"

**{8}**     Although the State argued below that these statutes are inapplicable because there was no arrest, on appeal, the State recognizes that the term "arrest" also includes temporary detentions. *See Slayton*, 2009-NMSC-054, ¶¶ 18-20 (holding that the term "arrest," as used in Section 66-8-124(A), includes temporary detentions). Consequently, the State's contention is that the BDUs worn by the officers in this case are uniforms and that the district court erred in concluding otherwise. We therefore restrict our analysis to the narrow issue presented by the State's argument: whether BDUs are uniforms as that term is used in Sections 66-8-124(A) and -125(C). The State also argues, in the alternative, that the exclusionary rule is inapplicable even if the statutes in question were violated. We do not reach the State's second argument because, as we explain below, we hold that the BDU worn by the officers in this case is a "uniform."

**{9}**     We previously examined the uniform requirement of Sections 66-8-124(A) and -125(C) in *Archuleta*, 118 N.M. at 162-64, 879 P.2d at 794-96. The defendant in *Archuleta* was convicted of speeding. *Id.* at 161, 879 P.2d at 793. He appealed, asserting that the speeding citation he received was issued in violation of Sections 66-8-124(A) and -125(C). *Archuleta*, 118 N.M. at 161, 879 P.2d at 793. The defendant claimed that the off-duty officer who issued the citation was not wearing a uniform but only a windbreaker with the words "Albuquerque Police" printed on it. *Id.* Interpreting the statutes, we first discerned that the Legislature intended that officers wear uniforms plainly indicating their official status so as to enable motorists to be certain that any officers who stop them are, in fact, police officers. *Id.* at 162, 879 P.2d 795. Additionally, we concluded that the statutory history of Section 66-8-124 shows that "the [L]egislature intended the definition of 'uniform' to be less restrictive, no doubt recognizing that modern day police officers may have more than one uniform or may on occasion wear combinations thereof." *Id.* at 163, 879 P.2d at 795. We then adopted two alternative and independent tests for determining whether an officer is in uniform. *Id.* The first of these tests is "whether there are sufficient indicia that would permit a reasonable person to believe the person purporting to be a peace officer is, in fact, who he claims to be[.]" *Id.* The second is "whether the person stopped and cited either personally

3

knows the officer or has information that should cause him to believe the person making the stop is an officer." *Id.*

**{10}** In *Archuleta*, we concluded that both tests were satisfied. *Id.* First, we determined that a reasonable person would have understood that the off-duty officer was in fact a policeman because he was wearing a windbreaker with clear police markings on it and was driving a marked police car. *Id.* As to the second test, we observed that it was clear the defendant understood that the off-duty officer was a police officer because the defendant, who was himself a former police officer, confronted the off-duty officer at one point, asserted that he had familiarity with police procedures, and protested that the off-duty officer had no authority to issue a citation because the off-duty officer was not wearing a uniform. *Id.* We apply the *Archuleta* analysis to the present case.

**{11}** Here, the district court made findings regarding the stop and described the BDU based on the exhibit of a photo of one of the arresting officers in this case wearing his BDU. The district court then concluded that the "uniform" referenced in the applicable statutes does not include the clothing the officer was wearing at the time of this incident—the BDU. The exhibit and the court's description reflect that the BDU is comprised of the following: black pants; black boots; a black vest to which is attached an electronic communication device with a chord; a black long-sleeve shirt with the words "STATE POLICE" in large bold yellow lettering on the sleeves, the word "POLICE" in large bold white lettering on the right shoulder area, a smaller triangular cloth patch with the words "STATE POLICE" also on the right shoulder; and, on the back of the shirt, the word "POLICE" in large bold white lettering in two places; an equipment belt, holster, and firearm; and a metal police badge hung from one of the front pockets. Evaluating this outfit in light of *Archuleta*, we apply the first test and conclude that a reasonable person would believe that an individual wearing a BDU is, in fact, a police officer. The word police is printed in large lettering in several locations on the garments comprising a BDU and an individual donning a BDU has equipment on their person consistent with what a police officer would possess. Accordingly, we hold that a BDU is a uniform as that term is used in Sections 66-8-124(A) and -125(C) and that the district court erred in concluding otherwise.

**{12}** Defendant contends that the time of day, in this case night, and the type of police vehicle, in this case an unmarked police vehicle, affect the analysis regarding the uniform. Defendant focuses on the difficulty in seeing black uniforms at night and that the flashing lights on the vehicle were not sufficient to lead a reasonable person to the conclusion that the people in the vehicle were law enforcement officers. While we agree that black uniforms might be difficult to see at night, it is the markings on the uniforms in yellow and white that indicate the status of the wearer. There is no evidence that the markings were not visible. Additionally, whether the vehicle was marked or unmarked does not affect our conclusion that the BDU is a uniform.

**{13}** Further, it appears that the district court reached the conclusion that a BDU is not a

4

uniform because it found the equipment belt and badge were not visible enough and because the uniform could, in the district court's judgment, be easily manufactured by someone wishing to impersonate a police officer. As discussed above, the Legislature intended the definition of the term "uniform" to be unrestrictive. *Archuleta*, 118 N.M. at 163, 879 P.2d at 795 (observing that the Legislature intended the definition of "uniform" to be less restrictive). The district court's analysis appears to have taken the opposite view and considered the term uniform in its most restrictive form. This was error. We also addressed the district court's second concern—that a BDU could be fabricated—in *Archuleta* where the defendant argued that the term "uniform" must be construed narrowly so as to protect the public from potential police impersonators. *Id.* at 163-64, 879 P.2d at 795-96. We were unpersuaded and concluded that this argument did not withstand scrutiny. *Id.* Law enforcement uniforms, we explained, are now readily available and, thus, there is little reason to suspect that even a full officer's attire could not be easily purchased. *Id.* In light of this precedent, we conclude that the district court erred to the extent that it decided that a BDU is not a uniform because part of the uniform was not sufficiently visible and because a BDU can be fabricated.

**{14}** In conclusion, we hold that the district court erred in granting Defendant's motion to suppress. A BDU is a uniform as that term is used in Sections 66-8-124(A) and -125(C). Neither statute was violated here. In light of this conclusion, we need not address the State's argument concerning the applicability of the exclusionary rule.

## III.    CONCLUSION

**{15}** For the foregoing reasons, the district court's order granting Defendant's motion to suppress is reversed.

**{16}    IT IS SO ORDERED.**

                                   _____

                                   **CELIA FOY CASTILLO, Judge**

**WE CONCUR:**

_____

**JAMES J. WECHSLER, Judge**

_____

**LINDA M. VANZI, Judge**

**Topic Index for *State v. Maes*, Docket No. 29,884**

| AE | APPEAL AND ERROR |
|---|---|
| AE-SR | Standard of Review |

**CT**                    **CONSTITUTIONAL LAW**
CT-SU               Suppression of Evidence

**CL**                    **CRIMINAL LAW**
CL-CL               Controlled Substances
CL-MH              Motor Vehicle Violations

**CA**                    **CRIMINAL PROCEDURE**
CA-MR              Motion to Suppress
CA-PQ              Pretextual Stop

**ST**                    **STATUTES**
ST-IP               Interpretation
ST-LI               Legislative Intent