FRENCH, Judge (concurring in part and dissenting in part).
{50} I concur in the Majority Opinion's application of "appropriately marked" to the vehicle driven by Deputy Russ relative to the aggravated fleeing statute, as that term appears in Section 30-22-1.1(A). In dissenting, I take issue with the Majority Opinion's holding that Deputy Russ was not in uniform when he pursued and arrested Defendant for aggravated fleeing.
{51} To determine whether Deputy Russ-adorned in a dress shirt, pants, a tie, and accessorized by his holster, sidearm, extra sidearm magazines, handcuffs, and his official sheriff's department badge pinned upon his chest-was in uniform for purposes of Section 30-22-1.1(A), our precedent uniformly, plainly, and consistently directs application of a straightforward objective test. Rejected by the Majority today, the test asks simply whether sufficient indicia of law enforcement authority was displayed such that a reasonable person ought conclude that the person purporting to be a peace officer in fact is. Yet today, the Majority upends that which a reasonable person might readily conclude for a rigid, cloth-specific, requirement that officers dress only in clothing that is itself marked, and diminishes law enforcement authority when those officers wear something other than that exact uniform. Specifically, because Deputy Russ's clothing did not demonstrably reiterate what his badge made clear, the Majority concludes he was not a "uniformed law enforcement officer" pursuant to Section 30-22-1.1(A). To so hold, the Majority discards this Court's objective test and applies a dictionarial approach to glean the plain meaning of uniform-as the dress or actual cloth worn-to the exclusion of Deputy Russ's official badge. I respectfully dissent.
{52} "Our primary goal when interpreting statutory language is to give effect to the intent of the [L]egislature." State v. Torres , 2006-NMCA-106, ¶ 8, 140 N.M. 230, 141 P.3d 1284. "We do this by giving effect to the plain meaning of the words of [the] statute, unless this leads to an absurd or unreasonable result." Marshall , 2004-NMCA-104, ¶ 7, 96 P.3d 801. In Archuleta , we first construed the plain meaning of uniform-"uniform plainly indicating his official status"-to give effect to the intention of the Legislature. 1994-NMCA-072, ¶ 9, 879 P.2d 792 ; see id. ("[T]he intention of the [L]egislature in requiring the officer to wear a uniform plainly indicating his official status was to enable the motorist to be certain that the officer who stops him is, in fact, a police officer."). The officer making the stop in Archuleta was dressed in plain clothes bearing no indicia that he was an officer.
*18 1994-NMCA-072, ¶ 2, 879 P.2d 792. Upon exiting his patrol car, he donned a police department windbreaker with a cloth shield on the front indicating "Albuquerque Police" and cloth shoulder patch to the same effect. Id. Applying our objective test to discern the legislative intent in the plain meaning of the words-"uniform clearly indicating the peace officer's official status[,]" and "in uniform[,]"-we held that sufficient indicia of law enforcement authority was clearly evinced with the addition of the cloth shield and patch. Sections 66-8-124(A) and -125(C); see also Archuleta , 1994-NMCA-072, ¶¶ 11-12, 879 P.2d 792. Here, Deputy Russ's official Curry County Sheriff's badge was at all times prominently displayed on his chest. Indeed, subsequent to Defendant's willful and careless fleeing and crashing his car, when Deputy Russ ordered Defendant to "show his hands" he did so, evidencing his compliance with and acknowledgment of the officer's official status and directive.
{53} In noting that the Legislature had removed language from what is now Section 66-8-124-which provided "uniform means an official badge prominently displayed, accompanied by a commission of office"-the Archuleta Court concluded that the Legislature intended the definition of "uniform" to be "less restrictive, no doubt recognizing that modern day police officers may have more than one uniform or may on occasion wear combinations thereof." 1994-NMCA-072, ¶ 10, 879 P.2d 792 (internal quotation marks omitted).
{54} In affirming this expression of legislative intent and applying Archuleta's objective test for determining whether an officer is in uniform, our Court in Maes held that non-traditional dress or garments, adorned with police lettering and accompanied by police badge, would constitute a uniform as that term is used in Section 66-8-124(A) and Section 66-8-125(C). Maes , 2011-NMCA-064,¶¶ 9-11, 255 P.3d 314 ; see id. ¶ 11 (holding garments consisting of cloth marked with "STATE POLICE" and "POLICE[,]" equipment belt, holster, firearm, and metal police badge, satisfied objective test that reasonable person would believe that person wearing such garments is, in fact, a police officer).
{55} There can be little doubt that we may infer that Deputy Russ's official badge conveyed words and symbols to the same effect as the cloth shield on the windbreaker in Archuleta or cloth garments in Maes -such as "Sheriff's Department" or "Sheriff." The Majority's rejection of the objective sufficient indicia of law enforcement authority test, in favor of a plain meaning of the word "uniformed" analysis, is inapposite to our Court's precedent. In so doing, the Majority would displace this Court's prior discernment of legislative intent for "uniform" and "in uniform," thus leading "to an absurd or unreasonable result." Marshall , 2004-NMCA-104, ¶ 7, 96 P.3d 801. Here, the unreasonable result is manifest: indicia of law enforcement authority that is stitched into or printed upon a clothing garment itself is sufficient to being "uniformed," whereas indicia of law enforcement authority imprinted or stamped into an official badge, or the forged official badge itself, pinned upon a clothing garment is not, regardless of the attendant sidearm, holster, and other law enforcement tools.
{56} Because I would hold that the tie, dress shirt, dress pants, badge, and the accouterments of law enforcement authority worn and displayed by Deputy Russ would sufficiently notify any reasonable person that the man they encountered was not Mr. Russ, but Deputy Russ, I respectfully dissent.